Francis G. Hooley, Off. Ref.
By order of this court dated the 30th day of June, 1955, it was directed that the above-entitled matter be referred to an Official Referee to hear the issues of damage awards and of the making of a just and equitable estimate of the assessment of the value of the benefits and improvements to the respective owners of the real property within the area of assessment and to report thereon to this court.
The undersigned Official Referee is submitting at this time under separate cover his report on the issues of damage awards and on the assessment of the value of the benefits and improvements on the real property within the area of assessment.
*695 This memorandum will deal with certain questions of law that have arisen in the proceeding and when the report on the issues of damage comes before the court for confirmation, it is intended that this memorandum will be read in connection therewith and will be explanatory of the procedure followed at the hearings, and this memorandum shall be deemed incorporated into and form part of such report.
This is a condemnation proceeding in which the Village of Garden City sought to acquire title in fee to certain property within the village for a parking field. The property to be acquired consists of 23 parcels all of which were heretofore zoned by the village for residental purposes. The evidence showed that a change in the zoning of property in the vicinity of the subject parcels had been under study since 1951 when the trustees of the village engaged a zoning expert to confer on a general revision of the ordinance. An advisory committee prepared and submitted to the trustees a draft of a proposed new zoning ordinance. This was the subject of a public hearing on January 25,1953. A map delineating the proposed zone changes was dated and filed in the Nassau County Clerk’s office on March 20, 1953.
The claimant Fowler’s Exhibits B and C show two maps of the proposed parking field No. 14 and show that on each of said maps all of the frontage on Washington Avenue was eliminated from the proposed parking field, the proposed parking field bounding the Washington Avenue property in the rear thereof.
On June 25, 1953 a hearing was had with respect to the proposed revision of the zoning ordinance before the Board of Trustees and the hearing was adjourned to July 2, 1953. On that date the hearing was closed and the matter was referred back to the advisory committee for further study. On November 30, 1953 the report of the advisory committee was printed, and a memorandum was submitted by such committee to the Board of Trustees in which it was recommended that several of the parcels (D-l, D-2 and D-3, Washington Avenue frontage) be changed on the proposed map from C-0 to R-6 Zone. The C-0 Zone permitted the use of commercial offices on the property in that zone. In the R-6 Zone the property was restricted to one-family residences. On February 18, 1954 this recommendation was approved 'and adopted by the village trustees over the opposition of some of the property owners. The public hearing in relation to this condemnation proceeding was had on May 27, 1954.
*696 The foregoing is recited to indicate that for some time prior to the institution of the present condemnation proceeding there was consideration given by the Board of Trustees and by a committee appointed by it to a change of zone of the property along Washington Avenue. One of the main issues in this condemnation proceeding was the contention on the part of some of the claimants that most of the property in question was not properly zoned, particularly with reference to the property facing on Washington Avenue in said village. On the south side of the Old Country Road in the village of G-arden City are located three substantial public office buildings of the County of Nassau. The line between the village of Garden City and the village of Mineóla passes through the center of the highway known as Old Country Road, and these buildings, consisting of the New Nassau County Courthouse together with the building housing the Nassau County Clerk and his records and the building housing the Nassau County Treasurer and his records, are generally known as being in the village of Mineóla, although actually located in the village of Garden City. Leading south from the Old Country Road is a street known as Washington Avenue. This is located to the east of the county buildings aforementioned. On the southeast corner of Old Country Road and Washington Avenue is located a gasoline station, and south of that are located parcels D-l, D-2 and D-3 on the condemnation map, facing on Washington Avenue and facing the county buildings. The general character of the neighborhood around the properties involved in this proceeding is primarily business area. On the southerly side of Old Country Road adjoining the gas station is property zoned for business use and primarily used for commercial office buildings. On the northerly side of Old Country Road and extending easterly for a distance of approximately 600 feet are various properties which are zoned for business use and commercial offices, and are actually used for housing the Civil Defense Unit of Nassau County, commercial offices and retail uses. Immediately to the east of parcel D-l is a parcel of land known as parcel- D-4 owned by the Olton Realty Corp. which was being used when title vested and for some time before as a parking field for tenants who occupied its office building on parcel A-3, as designated on the acquisition map, which office building fronts on Old Country Road.
Old Country Road is one of the main east-west arterial highways of Nassau County. Heavy traffic of all types travels thereon. Washington Avenue is a main north-south highway and is a very heavily travelled road containing four lanes. *697 Parcel D-l is located 113.14 feet south of the southeast corner of Washington Avenue and Old Country Road, which is one of the most travelled intersections in the whole of the County of Nassau. Parcel D-2 is located immediately to the south of parcel D-l. The owner of parcel D-2 purchased the property during the period when the Village Board was considering the over-all general area for a comprehensive zoning change, and the claimant as to parcel D-2, based on his observation of the area and its surrounding locality, coupled with the knowledge of the fact that consideration was being given by the Village of Garden City to zoning changes, and with general knowledge of the area, purchased parcel D-2 paying therefor the sum of $28,000.
The provisions of the Zoning Ordinance of the Incorporated Village of Garden City relative to the zoning of the various parcels was not disputed at the hearings. The validity or constitutionality of the zoning ordinance of the village was not attacked. The present zoning was a factor that the experts were bound to take into consideration. The position taken by the claimants was, however, that any reasonable administration of the zoning law of the village would warrant a change to a business use of some of the parcels upon application therefor. The claimants, the claimants’ experts, and counsel for the claimants raised the issue that some of the various parcels sought to be acquired were not properly zoned because of their location and the surrounding properties, the traffic on the street, the proximity of the gasoline service station at the corner of Washington Avenue and Old Country Road, and also the proximity to the other commercial office buildings on Old Country Road.
Witnesses generally stated that the best use of the property facing on Washington Avenue was for commercial office buildings. It was the general idea of the claimants’ witnesses that the property was in no way suited for residential purposes, and even the witness for the village testified that he would think definitely that as far as Washington Avenue was concerned it was poor residential property. As to other parcels shown on the condemnation map, there was testimony from real estate expert witnesses that the best use of the property was for parking field purposes, rather than for residential uses, especially those parcels contiguous or close to the commercial office buildings which would need considerable parking facilities.
As to parcel D-l, the witness for the claimant testified that if the subject property were zoned for commercial office buildings its value would be $42,785, but for residential purposes only *698 the parcel would be worth only $2,500. If, however, a professional man could have an office in the dwelling house, then the property would be worth $16,140. The witness for the village testified that he valued the said parcel D-l at $4,100. Similar instances could be given as to other parcels on the damage map.
The question of law that arises as respects the Washington Avenue frontage is whether the expert witnesses in deciding upon the values could consider as a factor therein the reasonable probability that the zoning might be changed or whether they were restricted only to the value under the provisions of the zoning ordinance, even though the property was unfit for residential purposes and the highest and best use of it was for commercial office buildings, and in some cases outside the Washington Avenue frontage for private parking fields in connection with the office buildings on Old Country Eoad. Furthermore, the discrepancy in value between the property used for commercial office purposes and the property used for residential purposes was so great that the continuance of the property in a residential zone would amount to confiscation, and in all probability in a proper case if the ordinance was attacked the court would find confiscation.
Considering the surroundings of the Washington Avenue properties in question, their inadaptability for residential use, their adaptability for commercial office purposes, and the fact that the Village Board had been discussing the question of putting the property on Washington Avenue to a commercial office building use, there is more than a reasonable probability that in the course of time if the condemnation proceeding had not come the property would be zoned for commercial office business use.
In Eminent Domain — Valuation and Procedure by Alfred D. Jahr (§ 66, p. 94), it is stated: “ Since the valuation in eminent domain is a judicial question based upon equitable principles, the courts sitting in judgment in determining the compensation endeavor to weight the justice and fairness between the condemnor and the condemnee, and attempt to arrive at a valuation which they deem to be fair and equitable to both parties.”
At pages 98 to 99 in section 70 of the last-named work, it is stated, referring to a New York court: “ The Court went on to say: 1 Fair market value of property actually taken as of the date of appropriation resides in an estimate and a determination of what is the fair, economic, just and equitable value under normal conditions * * * All elements of value that inhere in the property should be considered.’ ”
*699 In Matter of Jones Beach State Park Auth. (Southern State Parkway, Sections 2, 3 and 4, Map A-1R-5) reported in the New York Law Journal (Dec. 6, 1954, p. 14, col. 2), Mr. Justice Cortland A. Johnson indicated that a damage parcel had a peculiar location and the fact that it was zoned for residential use was not solely determinative of its value. This was in a condemnation proceeding. Mr. Justice Johnson wrote: “The fact that it is at present zoned for residential uses is not solely determinative of its value. Any reasonable administration of zoning law would warrant a change to a business use upon application; in fact, something of the sort had already occurred when the property was taken.”
Nichols on Eminent Domain (Vol. 4 [3d ed.], § 12.322, p. 141) states: ‘1 where * * * there is a possibility or probability that the zoning restriction may in the future be repealed or amended so as to permit the use in question, such likelihood may be considered if the prospect of such repeal or amendment is sufficiently likely to have an appreciable influence upon present market value. It follows from the foregoing that such possible change in the zoning regulations must not be remote or speculative.”
In Matter of City of New York (Inwood Hill Park) (230 App. Div. 41, affd. 256 N. Y. 556) the court said: “ The owner of lands being entitled to their fair market value for the most profitable use for which the property is available, this use cannot be cut down because the condemnor is in a position to refuse a consent necessary to make available the lands for such use, and does so refuse because of the effect upon the price in a contemplated condemnation. Each owner, so long as he is holding the property, is entitled to be considered in the same position as if his lands were not to be sought in condemnation. ’ ’
It is settled law that all the facts and circumstances which a buyer and seller would consider in connection with the purchase and sale of a piece of property are relevant and material in arriving at a determination of market value of property taken in a condemnation proceeding. (See Sparkhill Realty Corp. v. State of New York, 254 App. Div. 78.)
Orgel on Valuation under Eminent Domain (Vol. 1, pp. 167-168) states as follows: “It is generally held that although an ordinance may prohibit the use of the property for certain purposes at the time of condemnation, yet if there is a reasonable probability that the ordinance may be changed or an exception made, the value for that purpose as affected by the existing ordinance may be considered. ’ ’ The following cases were cited *700 in support of this proposition: Andrews v. City of Dallas (232 S. W. 2d 753 [Tex.]); Long Beach City High School Dist. v. Stewart (30 Cal. 2d 763); City of Tyler v. Ginn (225 S. W. 2d 997 [Tex.]).
In the case of Andrews v. City of Dallas (supra, p. 755), the court said: ‘ ‘ Where a city has zoned the property being condemned by it for residence use, it is error to exclude evidence of market value for residence purposes; it is also error to exclude its market value for any other purpose for which it is adaptable; and it matters not that the land may be presently unavailable under the zoning ordinance for all of such purposes.”
It has been held that the owner is entitled to show as bearing upon the question of value any fact which the owner would naturally and properly bring to the attention of a buyer with whom he was negotiating a sale. (See Sparkhill Realty Corp. v. State of New York, supra.)
In Long Beach City High School Dist. v. Stewart, decided by the Supreme Court of the State of California (30 Cal. 2d 763, 768, supra) the opinion read in part as follows: “ ‘ the compensation awarded when land is taken by eminent domain is the market value of the land for any use to which it is adapted and for which it is available.’ (§ 220, p. 671; emphasis added.) It is also said: ‘ When however a particular use of property is prohibited or restricted by law, but there is a reasonable probability that the prohibition or restriction will be modified or removed in the near future, the effect of such probability upon the value of the property may be taken into consideration.’ ” The case last cited was decided by a vote of 4 to 3. The prevailing opinion held that there was nothing in the record tending to show any reasonable probability that the prohibition or restriction would be modified or removed in the near future. The court said, (p. 770) “Neither industry nor business has been invading the residential development in the involved area ’ ’. The dissenting opinion written by Mr. Justice Schatter, in which opinion Mr. Justice Shetstk and Mr. Justice Carter concur, states as follows (pp. 783-784): “While the fact that a zoning ordinance forbidding particular uses had been enacted would be a material fact affecting the value of property in the zoned district generally, it would be only one of many facts from which the value of the particular parcel being condemned should be determined, and the fact that such parcel was being taken for a use proscribed by the ordinance would be highly persuasive that the ordinance was entitled to relatively little weight in fixing the market value. I am therefore of the view *701 that in presenting expert testimony as to value defendant was entitled to have the witnesses consider the influence on the present value of his land of uses, including industrial and school, to which the land was particularly adapted by reason of its character, its quantity, its dimensions, its location, its surroundings, its freedom and relative seclusion from public rights of way, the availability of transportation facilities, etc., even though a zoning ordinance presently proscribed or limited such uses.” Referring to the above quotation taken from the prevailing opinion in the case last cited, that “ Neither industry nor business has been invading the residential development in the involved area ’ it must be kept in mind that in the ease at bar business has invaded the area in question to a marked degree, thus affording grounds for a reasonable probability that the prohibition or restriction would be modified or removed in the near future.
In his report dated June 9, 1953, in the Matter of Acquiring Title by Union Free School District No. 23, Town of Hemp-stead, Nassau County, N. Y. (Index No. 320-1952), the undersigned Official Referee wrote: “ The objector has misconceived the determination of the official referee heretofore made. In his determination the official referee has given full and due consideration to the fact that the subject land presently is restricted in accordance with the zoning laws of the Town of Hempstead. However, giving full force and effect to this restriction, the official referee in arriving at a determination of the market value of the land in question is not restricted to a valuation predicated on the narrow use of the property permitted by a zoning ordinance, but may take into consideration what any prospective purchaser might consider, viz. — the uses for which the property is otherwise best suited, for which it is most valuable, and any reasonable probability whether such prohibition or restriction would be modified or removed in the near future (Nichols on Eminent Domain, Vol. 4, Sec. 12.322, page 141). The constitutional guarantee of reasonable compensation upon a taking for public use would become of little or no importance if the compensation is always restricted to the basis of only a use of property permitted by a zoning ordinance. Such an ordinance may be repealed or amended after the property is acquired. If a municipality could enact a zoning ordinance and later determine to acquire property covered by such ordinance by condemnation and have the right to completely exclude in such condemnation proceeding consideration of any use to which the property might be put except such as are specifically *702 permitted by the ordinance in question, the owner would lose the constitutional guarantee of reasonable compensation upon a taking for public use if there existed a reasonable probability that the restrictions might soon be modified. Prospective purchasers of the property would not be so limited in their appraisal or valuation, but would, no doubt, give consideration to the influence upon the value of the land in question of uses to which the land was particularly adapted by reason of its character, its location, its surroundings, taken in connection with any reasonable probability of the modification of such restrictions, even though a zoning ordinance presently proscribed or limited such uses. In arriving at the market value of premises, a court should take into consideration those matters which might affect prospective purchasers in their valuation of the land in question, because it is the attitude of these prospective purchasers which in the end makes market value. ’ ’
Without making any attack on the ordinance in question it is the opinion of the Official Referee that there is in this case evidence from which the court is able to find that there is more than a reasonable probability that this ordinance would he changed, especially in regard to the property fronting on Washington Avenue, and that, therefore, the real estate experts as to the various parcels had the right to consider the reasonable probability of such change as a factor in fixing their valuations. The Official Referee is of the opinion that under the facts in the case at bar the valuation of the various damage parcels given by the expert for the village, being predicated in every instance on the strait-jacket influence of the present zoning ordinance, is of little assistance to the Official Referee in fixing the valuation of any of the damage parcels.