Feed J. Munder, J.
In this condemnation proceeding the Town of Islip has acquired land adjacent to the southwest corner of the town airport, known as MacArthur Airport, for the purpose of providing a clear zone beyond one of the airport runways. This was to conform with a requirement of the Civil Aeronautics Authority, before that board would approve the airport for unlimited service, and also for the purpose of erecting a pumping station on said land to supply water to the airport. The title vested in the town on June 3, 1958 and this proceeding was continued to determine the amount of damage sustained by the claimants.
The taking included one parcel of 27.15 acres owned by Airport Industries, Inc., which was a part of total holding of about 139 acres, all of it zoned industrial. The total holding was a long, comparatively shallow parcel fronting on the westerly side of a concrete road known as Smithtown Avenue which also forms the westerly boundary of the airport. The parcel taken forms the southerly end of the claimant’s land and it is an irregularly shaped parcel with a frontage of 2519.41 feet on Smithtown Avenue (except for a 3-acre parcel with 400 feet of road frontage previously acquired by the town for the extension of the guard lights marking the end of the runway). The northerly line of the taking is an acute angle taking a considerably greater part of the road frontage than of the rear portion of the claimant’s original land.
The whole parcel is unimproved woodland, for the most part scrub pine and scrub oak. It is level land and at road elevation.
Much testimony was adduced concerning sales of industrial parcels in the general area which gave very little help because of the great disparity in the prices paid in relatively short periods of time. As one of the experts testified, ‘1 MacArthur Airport has been a speculator’s play toy” and another said, ” In the 10 years and 30 odd parcels of land I have sold here, I have yet to sell one piece of property to someone who is going to use it. These sales are strictly resales. ’ ’
Yet there is, as testified by the claimant’s expert, a definite trend which has been apparent for several years in the movement of industry eastward on Long Island. This is reflected in the speculation above noted but has been recognized too, by official bodies such as the Islip Town Board in increasing the available industrial acreage. I am unable to agree with the *659 town’s experts that the town’s purpose in trebling the industrial area was to decrease the value of such land.
Considerable emphasis was laid on the theory that industrial land values around the airport jumped after the Civil Aeronautics Board approved the airport for unlimited service and the suggestion was made that the acquisition of the clear area created this upsurge. But this approval has been the aim for years of the Town Board and other ifiterested agencies. The potential of greater value for the surrounding industrial area was based on the long-term effort and not only on the final step (the clear area acquisition) which brought about the approval and consequent greater availability and use of the airport.
This situation is analogous to that in the case of Matter of Village of Garden City (9 Misc 2d 693, affd. 4 A D 2d 783, motion for leave to appeal denied 3 N Y 2d 708) in which Hon. Francis Gr. Hooley, Official Referee, said: “ * * * However, giving full force and effect to this restriction, the official referee in arriving at a determination of the market value of the land in question is not restricted to a valuation predicated on the narrow use of the property permitted by a zoning ordinance, but may take into consideration what any prospective purchaser might consider, viz. — the uses for which the property is otherwise best suited, for which it is most valuable, and any reasonable probability whether such prohibition or restriction would be modified or removed in the near future (Nichols on Eminent Domain, Vol. 4, Sec. 12.322, page 141).”
This is different from the situation where the improvement alone enhances the value of the remaining land and an effort is made to use that enhanced value as the basis to determine the value of that taken. Here the airport existed and it was the subject of a continuous scheme of improvement and development. (See, e.g., Yol. 1, Orgel, Yaluation, p. 443, § 104.) It is inconceivable that it would be abandoned after all the efforts to enlarge its use. That claimant’s property was selected for the clear zone rather than that of some other owner should not prevent its recovery of the fair value in the light of the reasonable potential of the land.
The claimant’s expert placed a value of $108,000 on the land taken, he said at a rate of $3,750 an acre although it comes closer to $4,000 an acre. The town’s experts valued the land at $1,000 an acre, giving no effect to the potential. I conclude that the fair value is $2,750 an acre and award the total sum of $70,662.50.
To the west of the land of Airport Industries, Inc., there were taken a number of lots on a filed map, some on an improved street, some on one-track dirt roads and some on mapped streets *660 not yet cut through. One claimant, Post Acres of Massapequa Park, Inc., was the owner of the following lots:
Damage Parcel 11 Block 27 Lots 20-29
Damage Parcel 12 Block 29 Lots 6-48
Damage Parcel 13 Block 31 Lots 1-21
Damage Parcel 14 Block 32 Lots 1-48
Damage Parcel 15 Block 34 Lots 1-8, 16-28
Damage Parcel 16 Block 35 Lots 1-37
Damage Parcel 17 Block 37 Lots 1-26
Damage Parcel 18 Block 38 Lots 8-35, 44-48
Damage Parcel 19 Block 40 Lots 1-38, 41-48
Damage Parcel 20 Block 41 Lots 1-30, 40-48.
These lots are not all contiguous or part of an unbroken plot. They are in an undeveloped scrub oak area in which the only street worthy of that appellation is Lakeland Avenue, an old through road which existed long before the map was filed and which has a good oiled surface.
The claimant’s expert gave a front foot valuation for each lot as follows:
$5 per front foot on streets not cut through
$6 per front foot on dirt streets
$9 per front foot for lots 65 feet deep on “ paved ” road
$11 per front foot on a “ paved ’ ’ spur off Lakeland Avenue
$12 per front foot on Lakeland Avenue.
He also gave corner increments of $100, $150 and $200, some on corners nonexistent except on the map. He figured consequential damage to some other noncontiguous land owned by the claimant in the adjacent area for bringing in water mains. This he estimated at $3,500 and concluded that the total damage was $45,100. The petitioner’s appraisers valued the 324 lots taken at $12,395, roughly averaging them at $38 a lot.
Considerable emphasis was laid by the claimant on the fact that these lots are assessed at $30 a lot for tax purposes and that the State equalization rate for Islip is about 33%%, indicating the Assessors’ estimate of true value to be $90 a lot. While valuations fixed by tax assessors are considered in New York City where realty is assessed at full value, they are not elsewhere a reliable source of information. In Matter of Simmons (132 App. Div. 574) such proof was considered but there it was accepted only to justify an award by Commissioners at less than any value established by the testimony, even that of the condemnor’s expert. The evidence sometimes is received as an exception to the hearsay rule but the great weight of authority in the country holds it to be incompetent direct evidence of *661 value except for tax purposes. (39 A. L. B. 2d 214.) In our case it is apparent that the lots were not individually considered by the Assessors who put the same value on an inaccessible lot as one on a 50-foot thoroughfare. Yet this very method of averaging lot values is not one strange to investors or speculators in this type of land, as was evidenced by the testimony of this claimant’s corporate secretary. He said the cost to claimant in 1956 averaged $98.43 per lot for 1,287 lots.
After inspection and a consideration of the physical aspects of the property, including the detrimental aspect of proximity to the end of an instrument runway, as well as a review of the testimony of the trial, I have concluded that the fair value of the 28 lots fronting on Lakeland Avenue is $150 per lot or the sum of $4,200; the 82 lots on the opened side streets and on Powell Street is $75 per lot or the sum of $6,150, and 214 lots on unopened map streets is $50 per lot or the sum of $10,700, making the total sum of $21,050. No value is placed on corner increment, so-called, and no consequential damages are awarded.
Other claimants, some appearing by attorneys and one without, have agreed to abide by the court’s decision after hearing the evidence. These claims are disposed of as follows:
Marguerite Grenier ..................$ 100
Nathalie Drozdoff Cherney............$ 400
Ellen F. Shields......................$ 450
Helen Kantrowitz....................$1,650
P. K. Realty Co.......................$ 750.
All other claims have been compromised, so the court is informed.
This will constitute the decision pursuant to section 440 of the Civil Practice Act. Submit order. No costs.