SEYMERE L. MASTEN et al., Respondents-Appellants, *v.* STATE OF NEW YORK, Appellant-Respondent. (Claim No. 34452.)

Third Department, November 4, 1960.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* and *Paxton Blair* of counsel), for appellant-respondent.

*E. & S. L. & E. Greenberg (Emanuel Greenberg* of counsel), for respondents-appellants.

GIBSON, J. The State appeals, and claimants cross-appeal, from a judgment of the Court of Claims awarding $62,000 for the appropriation of certain lands for Thruway purposes. The taking was of 6.26 acres in Rockland County from a parcel of 49.234 acres fronting on Route 59, a busy cross-county highway connecting Route 9W and Route 17. The improvements — a dwelling, barn and smaller buildings — were not taken. Claimants resided upon the premises. A small part of the acreage under cultivation was used for growing vegetables and the remainder as an apple orchard.

The principal issue, which seems the critical one, arises from proof intended to demonstrate the imminence of a change in the existing zoning restrictions. We find, contrary to the State's contention, that the proof established " the reasonable probability that the zoning might be changed " to permit the use of claimants' highway frontage (then restricted to residential use) for commercial purposes; and that such probability thereupon became a factor in the determination of value. (*Matter of Incorporated Vil. of Garden City,* 9 Misc 2d 693, 698, affd. 4 A D 2d 783, motion for leave to appeal denied 3 N Y 2d 708; *Valley Stream Lawns* v. *State of New York,* 9 A D 2d 149.) The proof was that a number of business and commercial establishments existed in the neighborhood before the appropriation; that the highway traffic became increasingly heavy; that a large number of variances from the residential restrictions were granted before and after the appropriation and that, apparently, no applications therefor were denied. The State objected to

the evidence as to variances and it is true that an occasional, isolated variance granted in the exercise of discretion would have little or no probative force; but here the effect is to evidence a condition and continuing trend that rendered early rezoning very nearly inevitable. More significant, perhaps, was the proof that about a year before the appropriation a citizen's committee was appointed by resolution of the Ramapo Town Board to work with that and other boards upon zoning revision and that (as appears from an exhibit erroneously excluded) there followed study and several reports and hearings, after which and some three years after the appropriation, there was enacted a comprehensive amendment of the ordinance which, among other things, placed the frontage of claimants' property in a highway business district. Evidence of this same nature was accorded considerable weight in the *Garden City* case (*supra,* pp. 695–696) and the relevance of such proof was recognized in *State* v. *Gorga* (26 N. J. 113), cited by both parties.

The State contends further that, even if it be assumed that the probability of a rezoning was properly shown, the claimants' expert evidence must nevertheless be rejected because the expert evaluated the property as though the change was an accomplished fact. As we held in *Valley Stream Lawns* (9 A D 2d 149, 152, *supra*), the probabilities " may be shown to have an actual effect on an existing market. The fact they may not actually happen is not to say this possibility does not influence the market "; and as was said in *Gorga* (*supra,* p. 117), " The important *caveat* is that the true issue is not the value of the property for the use which would be permitted if the amendment were adopted. * * * No matter how probable an amendment may seem, an element of uncertainty remains and has its impact upon the selling price. At most a buyer would pay a premium for that probability in addition to what the property is worth under the restrictions of the existing ordinance." It is clear that claimants' expert discounted nothing for this " element of uncertainty " when, in his words, he appraised the frontage " as business instead of residential ". We do not agree with the State's further contention, however, that the record indicates that the trial court accepted, or that the decision gave effect to the erroneous factor in the appraisal, and the findings, fairly read, are to the contrary. This record is perhaps exceptional in that it supplies an unusually strong basis for inference of probable imminent zoning change and seems to us adequate to permit a fair determination of the value of the frontage according to the proper rule and, upon our consideration of all the

factors reflected in the testimony and in the decision, we are satisfied that the trial court did so.

In this connection it is to be noted that claimants' witness, after allowing for roads, considered the highway frontage upon the basis of 10 prospective lots, each 200 feet in depth and 100 feet wide (except that one was slightly less) and valued them at $99,100 or approximately 50 cents per square foot, as against sale prices of from 35 cents to 77 cents for supposedly comparable lands in the vicinity. This witness valued the remaining lands at $115,000, the improvements at $24,732 and arrived at a total value before taking of $238,832 (which must be revised to $228,832, as hereinafter indicated); this figure comparing with the State's appraisal, on the basis of residential use only, at $127,600 and with the court's finding of $157,000. Further, the finding included the value of improvements while the State's witness allowed nothing therefor and, as respects land value before the taking, the finding seems not greatly discrepant with the State's appraisal, and certainly the amounts are not in such disparity as to indicate an excessive allowance for the probability of zoning change. Indeed, the State's expert said that the value of the highway frontage which he did not separately evaluate, would have been "maybe 50%" higher if it could have been used for commercial or business purposes; and from this testimony it follows that more than a nominal amount would have to be added to his appraisal figure in order to give effect to the probability of rezoning found by us to have been proven.

An error in claimants' expert's computation of acreage and resulting valuations was, in part, corrected upon the trial and, in any event, readily yields to adjustment, with the result of demonstrating (in close approximation) claimants' proof of damage as follows: Value before taking, $228,800; direct damage, $72,800; remainder, $156,000; consequential damage at 25%, $39,000; value after taking, $117,000; and resulting total damages, $111,800. It is clear from the trial record and from the finding that the trial court was not misled by the error.

The State's additional objections to claimants' proof seem to us unsubstantial and do not require discussion.

The testimony of the State's expert fixed the before and after values and the damages at $127,600, $92,970 and $34,880, respectively. He allowed no consequential damage; gave no effect to the likelihood of a rezoning change (which seems to us to have been clearly established) with the result that he evaluated the property for residence purposes in a neighborhood rapidly becoming commercial, at the same time conceding that the

frontage would be worth perhaps 50% more for commercial or business purposes. We find his testimony unpersuasive.

We perceive in claimants' argument no sound basis for increasing the award, which seems to us supported by preponderant proof. Additionally, and particularly as respects the complaints as to changes in contour, we give weight to the trial court's inspection of the premises.

The judgment should be affirmed, with costs to claimants-respondents.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Judgment affirmed, with costs to claimants-respondents.