CITY OF ALBANY, Respondent, v. STATE OF NEW YORK, Appellant. (Claim No. 37586.)

Third Department, April 10, 1962.

*Louis J. Lefkowitz, Attorney-General* (*Julius L. Sackman* and *Paxton Blair* of counsel), for appellant.

*John W. Hacker, Corporation Counsel (Harold E. Blodgett of counsel), for respondent.*

*Per Curiam.* This is an appeal by the State from an appropriation award in favor of the City of Albany in the amount of $909,795.25.

There is no serious dispute as to the factual issues but only as to values.

For about one hundred years prior to the taking, the City of Albany had owned approximately 419.657 acres of undeveloped land located just west of the city line in the Towns of Guilderland and Colonie in Albany County. The land is sandy, rolling terrain with scrub pine, scrub growth being from moderate to dense. Rensselaer Lake, also known as "Six-Mile Water Works", occupied about 39 acres of the property and prior to 1925 had been the source of water supply for the City of Albany. At the time of the appropriation there was no "physical or piping connection with the City Water System". There was testimony introduced that it had some potential value as a supplier of water for industrial purposes.

Prior to the acquisition by the State of 72.669 acres and 7.969 acres for permanent easement, which property was used for the construction of the Northway (Route No. 87), the property was divided north and south by the main line of the New York Central Railroad tracks. This appropriation has divided the property east to west so that there remain four distinct parcels which have been designated and described by the various witnesses and the court as Parcels " A ", " B ", " C " and " D ".

The court determined the value of the property north of the railroad tracks before the taking to be ................................... $894,990.00
and the property south of the railroad tracks.... . 774,938.00

In sum the court found the total value of all the property to be............................... $1,669,928.00
After value .................................. 760,132.75

Total Damages found by the Court of Claims..... $909,795.25

In arriving at such determination, the court found that the property before the taking was best suited for industrial purposes, except for the frontage on Central Avenue which was commercial; that after the taking Parcel " A " was best suited for residential purposes, Parcels " B " and " C " for industrial purposes, and Parcel " D " for residential purposes.

The State contends on this appeal that the formula used by the court was erroneous; that the property was best suited before the taking for residential purposes; that the city was paid for land under water; and that the court also considered the use of the water for future purposes.

In our consideration of the decision of the Court of Claims, we will refer to the property as either industrial or residential and consider each parcel in determining the appropriated value of the property.

Prior to the appropriation, the land north and south of the railroad was not divided in an east to west direction by any physical barrier. However, for purposes of classifying the property as residential or industrial, the westerly boundary of the Northway (Route No. 87) approximates the natural dividing line of the property in terms of its usefulness prior to the appropriation. Accordingly, the court is using the designation of Parcels " A ", " B ", " C " and " D " in referring to the before value and after value of this entire piece of property.

Parcel " A "— This parcel consists of 48.858 acres and is located north of the railroad tracks and to the west of Route No. 87. On the north and west it is bounded by a restricted residential development known as " Tanglewood ". The property is entirely within the Village and Town of Colonie and zoned as residential property. The court, in determining that the property before the taking was best suited for industrial purposes, relied upon *Matter of Incorporated Vil. of Garden City* (9 Misc 2d 693, affd. 4 A D 2d 783, motion for leave to appeal denied 3 N Y 2d 708); *Masten* v. *State of New York* (11 A D 2d 370, affd. 9 N Y 2d 796). The Court of Claims said in its opinion (p. 605) : " The developments which already existed in the area had a dominating influence outside their own confines and influenced the market for the land in question, and, upon the evidence, reasonable probability suggests zoning law changes would be made where necessary."

The factual situation in the cases cited by the court shows that prior to the appropriation, some affirmative act had been initiated tending to the eventual application for rezoning, which is not the fact in this case. So far as Parcel " A " is concerned, there is no evidence of any suggested zoning changes by the Town or Village of Colonie and the record does not sustain a conclusion that there was a probability or possibility of this section becoming industrial property, either imminently or remotely. The testimony by the claimant's witnesses, who gave no consideration to the zoning restrictions, that the property after the appropriation was best suited for residential purposes

is a finding that the record justifies as to the before value as well. The most accessible means of entry to this part of the city property is by Richards Drive, which is part of the residential one-family housing development. Accordingly, we find the record does not sustain as to this parcel a finding of industrial value prior to the taking, and reverse such finding and determine that the property before and after was best suited as zoned for residential use. As to this parcel, the Court of Claims

found the value before to be.................. $175,031.50
after value ............................... 48,858.00

and damages of............................. $126,173.50
We find the before value.......... $65,011.70
after value ................... 63,515.40

Damages in the amount of........ $1,496.30

Parcel "B" is north of the railroad tracks, east of Route No. 87, bounded on the east by what is known as Industrial Park and other lands and on the north by Central Avenue. Prior to the appropriation, "A" and "B" consisted of all of the property north of the railroad tracks and was, of course, not divided by the new highway. Witnesses for both parties testified that the frontage on Central Avenue consisted of 2,233.58 feet and the value of $150 per foot was adopted by the court and is not disputed.

This amounts to............................ $335.037.00*
The after value of 364.58** feet (not appropriated) at the same price is................ 54,687.00

Damages ................................... $280,350.00

While this property is zoned residential, we determine that there was a fair basis for the application by the court of the principle of *Masten* v. *State of New York* (11 A D 2d 370, affd. 9 N Y 2d 796, *supra*). Contiguous to the property on the east and north thereof was an industrial and commercial development of sufficient size and consequence to justify the determination of the court that a zoning change was "imminent". As to "B", the Court of Claims found the value before (109.991

acres X $3,500)............................. $384,968.50
after (71.174 acres X $3,500)................. 249,111.00

---

* Denotes mathematical correction.
** Denotes correction in the front footage on Central Avenue.

Damages .................................. $135,857.50
Damages to Central Avenue frontage.......... 238,090.00

Total Damages to Parcel "B"............... $373,947.50
We find the before value.......... $384.968.50
after (73.117 acres X $3,500)...... 255,909.50

Damages ...................... $129,059.00
Damages to Central Avenue front-
age ......................... 280,350.00

Total Damages to Parcel "B".. $409,409.00

We determine the total damages to the property north of the railroad tracks to be $410,905.30.

Parcel "C"—This parcel is south of the railroad tracks and east of Route No. 87, bounded on the south by the Washington Avenue Extension and on the east by Fuller Road. Here again we accept the finding of the Court of Claims that the property before and after was best suited for industrial purposes albeit zoned residential. There is no serious dispute in the record that Fuller Road has and continues to be developed for commercial and industrial purposes, and the prior statement we made as to the imminence of probable zoning change applies to the present parcel. The Court of Claims found a before value of $353,885.30 which we determine to be $348,120.50.* With this amendment, we accept the findings of the Court of Claims as to values:

Before .................................. $348,120.50
After .................................. 259,640.50

Damages .................................. $88,480.00

The *Masten* case (11 A D 2d 370, 372, *supra*) further decided: " ' No matter how probable an amendment may seem, an element of uncertainty remains  *   *   *   At most a buyer would pay a premium for that probability in addition to what the property is worth under the restriction of the existing ordinance.' " The record here contained a number of comparable sales which, together with the expert testimony, indicated that the fair value of the property for industrial purposes was $4,000 an acre.

* Denotes a correction in the Court of Claims figures. The total. acreage south of the tracks before the taking, 239.814 acres and after taking 140.351 contained in Parcel "D", the remaining acreage is not 101.110 acres at $3,500 per acre, as computed by the court, but 99.463, a difference of 1.647 at $3,500 per acre, resulting in the monetary deduction.

We find as to Parcels " B " and " C " that the price of $3,500 per acre, as determined by the court, was not, under the circumstances, unreasonable.

Parcel " D " is located south of the railroad tracks, west of Route No. 87, bounded on the south by the Washington Avenue Extension and on the west by lands of a private owner. Prior to the taking there was no separation between " C " and " D ". The access from " C " to " D " has been limited by the road construction. At the westerly extremity of the property there is access to and from Rapp Road. This parcel consisted of 140.351 acres which the court valued at $3,000 an acre for industrial purposes and the after value at $750 per acre for residential (the difference being consequential damages).

Following the same yardstick adopted as to " B " and " C ", we are of the opinion that the probable zoning amendment would have changed, under the circumstances herein, all of the property south of the railroad tracks, which includes the present " C " and " D ". We determine that the premium price of $3,000 as to Parcel " D " found by the court is excessive and determine a more realistic price to be $2,500 per acre. In our opinion, this part of the original parcel was not as accessible for industrial purposes as " B " and " C ". As to this parcel, the

| | | |
|---|---|---|
| Court of Claims found the value before | | $421,053.00 |
| after | | 105,623.25 |
| Damages | | $315,429.75 |
| We determine the value, before | $350,877.50 | |
| after | 105,623.25 | |
| Damages | $245,254.25 | |

We determine the total damages to the property south of the railroad tracks to be $333,734.25.

This court determines the total damage to the *entire* tract as a result of the appropriation to be $744,689.55, which includes a stipulated $50 item for temporary easement.

A summary of the amendments, as found by this court, is:

1. That the highest and best use of the northwesterly portion of the land north of the railroad, Parcel " A " (50.009) acres) was for residential purposes prior to the appropriation with a value of $1,300 per acre.

2. That the above Parcel " A " was after the taking most useful for residential purposes, consisting of 48.858 acres valued at $1,300 per acre.

3. That the proper value for Parcel " D ", the southwesterly portion of the land south of the railroad, before the appropriation was 140.351 acres at a value of $2,500 per acre.

4. That the acreage south of the railroad exclusive of Parcel " D " prior to the taking was 99.463 acres and that the total acreage south of the railroad was 239.814 acres.

5. That the frontage on Central Avenue prior to the taking was 2,233.58 feet at $150 per front foot for a total value of $335,037 prior to the taking.

6. That the frontage on Central Avenue after the taking was 364.58 feet at $150 per front foot for a total after value of $54,687.

7. That the acreage in Parcel " B " after the appropriation was 73.117 at $3,500 for a remaining value of $255,909.50, exclusive of the Central Avenue frontage.

8. That the total value of the land north of the railroad before the appropriation was $785,017.20; south of the railroad was $698,998; total value of $1,484,015.20.

9. That the total value of the land north of the railroad after the appropriation was $374,111.90; south of the railroad was $365,263.75; total after value of $739,375.65.

10. It was stipulated that the value of a temporary easement was $50.

11. The before value was........................$1,484,015.20
The after value was.......................   739,375.65

Resulting in total damages
(including the $50) of..................   $744,689.55

The city offered proof as to the water, its use and possible diminution, which the State contends on this appeal is first, seeking to be reimbursed for the damage to the water and secondly, being paid for the land under the water. We do not make this distinction but in any event, the award, as herein computed, is inclusive of any and all such rights if such exist.

One of the witnesses for the claimant testified as to the sale of property for the purpose of determining value at $50,000 which concededly should have been $15,000 and while the court referred to the higher price in its opinion, we do not perceive that it was used in arriving at values and, under the circumstances, it was not such an error as to necessitate a reversal.

The judgment of the Court of Claims should be modified by finding the total damages to be $744,689.55, with interest from July 1, 1959 to December 31, 1959, and from March 15, 1960 on the sum of $744,639.55, together with costs.

BERGAN, P. J. (dissenting in part). I agree with the disposition now made of Parcels "B", "C" and "D", but I am unable to draw the distinction suggested as to Parcel "A", the consequential damage in which is being drastically reduced from $126,173.50, found by the Court of Claims, to $1,496.30 in this court. The land on the north side of the railroad line, comprising the parcels now called "A" and "B" was, before the Northway taking, all part of an unbroken and unitary plot of land. No such sharp differenitation in this kind of unitary plot, between a value of $3,500 an acre on one side of a theoretical line, and $1,300 on the other, seems justified.

Whether a real estate expert or a court calls this kind of land "industrial" or "residential", there could be no doubt that the original tract having large plottage unbroken north of the railroad was more valuable before the highway cut across it, than after. It is an almost universal rule that the plottage value of a large tract is higher than the sum of its broken-up units.

Moreover, the possibility of rezoning is only one factor, and a fairly uncertain one, if expert opinion is relied upon in determining the value of real property where changes are occurring in a neighborhood. As we noted in *Masten* v. *State of New York* (11 A D 2d 370, 372, affd. 9 N Y 2d 796) and again in *Valley Stream Lawns* v. *State of New York* (9 A D 2d 149, 152) the possibility of rezoning is significant only in its impact on market value which may be affected whether or not the change in zoning actually occurs. The basic rule is that compensation depends on market value and that no single element of value is decisive (*Matter of Board of Water Supply of City of N. Y.*, 277 N. Y. 452).

There can be no doubt that changes of large economic importance have occurred and are occurring in this area in the accommodation of which zoning regulations are usually recast and adapted. In view of all this I consider that the damage to Parcel "A" as now found is too low in relation to the determination being made as to the contiguous Parcel "B".

GIBSON, HERLIHY, REYNOLDS and TAYLOR, JJ., concur in *Per Curiam* opinion; BERGAN, P. J., dissents, in part, in opinion.

Judgment of the Court of Claims modified by finding the total damages to be $744,689.55, with interest from July 1, 1959 to December 31, 1959, and from March 15, 1960 on the sum of $744,639.55, together with costs.