## (December 8, 1977)

■ TOBY WEINGARTEN et al., Appellants-Respondents, v STATE OF NEW YORK, Respondent-Appellant. (Claim No. 49229.)—Cross appeals from a judgment, entered June 6, 1972, upon a decision of the Court of Claims, which awarded claimants $246,723 plus interest for the appropriation of their property pursuant to section 30 of the Highway Law. Before the taking claimant owned 69.909 acres, part zoned by the Town of Ramapo for residential, part for commercial use. The State took 8.563 acres in fee and two permanent drainage easements totaling .657 acre. The court placed the value, both before and after the taking, of the commercial land at $50,000 per acre and the residential at $15,000 per acre. These figures the parties do not dispute. Claimants appeal on the ground that the court improperly set the boundary between the residential and commercial zones so as to increase the portion deemed the less valuable residential land. Claimants also contend the court erred in refusing to add an increment to the value of the residential land for the probability of rezoning and in denying claimants a pro rata return of real property taxes. It is not possible to accurately fix the boundary between the commercial and residential zones by referring to the line drawn on the town zoning map since that map is insufficiently detailed and the highway right of way is not shown on said map. The Court of Claims, therefore, resorted to extrinsic evidence, hearing testimony from the planning consultant, Mr. Emanuel, who had recommended the boundary amendments in effect at the time of the taking and from three members of

the five-member town board which enacted the amendments. Mr. Emanuel, testifying for the State, placed the line at about the northern edge of the State's taking line. He said the zoning boundary was drawn by reference to property lines existing before the December, 1966 amendment, not by reference to the taking line, which had not been finally determined at the time of the amendment. Mr. Emanuel's testimony was illustrated by maps (State Exhibits G, F), and we find his reasons for determining the position of the line plausible in light of the property line configurations shown on Exhibits G and F. The members of the town board testified they intended the zoning boundary to follow the centerline of the proposed highway, even though the precise route had not been determined in December, 1966, the date of the enactment of the ordinance. Although, as claimants contend, the testimony of the legislators themselves is the most direct evidence of legislative intent, the credibility of the witnesses must also be considered. From what appears in the record, all the witnesses who testified on this point were equally disinterested, and therefore the conclusion of the trial court, involving as it does determinations of credibility based on courtroom demeanor, should be affirmed (see 7 Weinstein-Korn-Miller, NY Civ Prac, par 5501.20). Claimants assert that even if the trial court accurately set the boundary line, it did not accurately calculate the various areas in relation to that line. In particular, claimants contend the finding that before the taking there were 36.9 acres of commercial land is without any foundation in the record. Claimants' expert, who based his calculation on the rejected assumption that the zoning boundary followed the center of the right of way, thought the commercial portion comprised 39.486 acres. The State's appraiser, Mr. Beasley, at first thought the commercial land was 34.52 acres, but then increased this estimate upward somewhat to be more in keeping with the zoning boundary as indicated by the testimony of Mr. Emanuel. It is clear the precise area is greater than 34.52 and less than 39.486 acres and that 36.9 acres is a fair approximation in keeping with the zoning boundary as fixed by Mr. Emanuel and accepted by the court. Next, there is ample support for the court's refusal to add an increment to the value of part of the residentially-zoned land to reflect the probability of obtaining a zoning change. The zoning boundary in question had been redrawn a mere eight months before the taking, the planning consultant Emanuel testified that increasing the proportion of the tract zoned commercial would allow undesirable development by inordinately expanding the depth of the commercial zone, and there was no evidence of successful requests for zoning changes in the area of the subject property. The testimony of the town board members that a change would likely have been granted is entitled to little weight in light of their recent action with respect to the very boundary in question (cf. *Maloney v State of New York,* 48 AD2d 755), and certainly claimants' proof falls short of establishing the "probable imminent zoning change"* contemplated in *Masten v State of New York* (11 AD2d 370, 372, affd 9 NY2d 796). Claimants finally contend they should have been reimbursed for the portion of the real estate taxes they paid allocable to the taken land following the date of the taking. As found by the

---

* In their brief in this court, claimants argue that an increment for zoning change should be allowed at least with respect to the residential land encumbered by the Orange and Rockland Utilities power line easement, since this land has virtually no value for residential use. This argument is inconsistent with the appraisal submitted by claimants which valued all the residential land, including that encumbered by the easement, at $15,000 per acre.

Court of Claims, claimants inaccurately proved the amount of reimbursement due them and failed to provide the court with the information necessary to make a proper calculation. Claimant Joseph Appelman admitted the tax rate for commercially-zoned land was different from the residential rate, but was unable to state what the rates were. In light of this failure of proof, the claim for tax reimbursement was properly dismissed. The State, on its cross appeal, first argues that with respect to Parcel No. 172, over which a permanent easement was taken, the court erred in awarding direct damages of 100% of the parcel's market value. Since this was less than a fee taking, we find the State's expert's appraisal of damages at 90% of market value more reasonable, and we therefore modify by reducing the award as to Parcel No. 172 by 10%, i.e., by $934.50. Such a reduction makes the award for Parcel No. 172 consistent with the award of 90% damages made for Parcel No. 173 over which a permanent drainage easement was also taken. The State also contends no award should have been made for reduction in the rent claimants would receive from their tenant operating a drive-in theatre on a portion of the property. Since both appraisers found that no reduction in rent would occur as a result of the taking, there is no basis for the $7,209 award for lost rent. Judgment modified, on the law and the facts, by reducing the award for direct and consequential damages by $8,143.50 to $238,579.50, together with appropriate interest, and, as so modified, affirmed, without costs. Greenblott, J. P., Kane, Mahoney, Mikoll and Herlihy, JJ., concur.