■ In the Matter of the TOWN OF ISLIP, Appellant-Respondent, Relative to Acquiring Title to Real Property Situated in the Hamlet of Sayville in the Town of Islip. JOSEPH MASCIOLI et al., Respondents-Appellants.—In a condemnation proceeding, the parties cross-appeal from an order and decree (one paper) of the Supreme Court, Suffolk County, dated July 13, 1977, which, after a nonjury trial, fixed the compensation for the taking. The appeals also bring up for review so much of a further order of the same court, dated September 8, 1977, as upon reargument, adhered to its original determination. Cross appeal of claimants dismissed, without costs or disbursements. The cross appeal was not perfected in accordance with the rules of this court (see *Howe Ave. Nursing Home v Nafus,* 54 AD2d 686). Appeal from order and decree dated July 13, 1977, dismissed as academic. That order and decree was superseded by the order made upon reargument. Order dated September 8, 1977, affirmed insofar as reviewed. The claimants are awarded one bill of costs. As a result of the straightening of Montauk Highway and the removal of an S curve thereon, claimants were left with a narrow elliptical parcel about 600 feet long, narrow at both ends, and about 100 feet wide at its widest point. An application for rezoning from residential AA to business 1, made prior to the taking, had not been acted upon, assertedly because of the imminent condemnation. Claimants' experts demonstrated to the court's satisfaction that if two homes were to be constructed on this parcel, they would be unmarketable, and that its highest and best use was for business purposes. The town's expert found no possibility of rezoning, and restricted his value to residential purposes only. The court correctly found that just compensation, as mandated by the New York State Constitution (art I, § 7), requires that an increment above residential value be added to the taking damage, because claimants had been deprived of the reasonable use of their property, as well as its unique shape. Accordingly, since there was evidence adduced to support the court's evaluation, and it has been adequately explained, the order dated September 8, 1977, must be affirmed insofar as reviewed. Latham, J. P., Gulotta and Shapiro, JJ., concur.

Suozzi, J., concurs as to the dismissal of the order and decree and the cross appeal, but otherwise dissents and votes to modify the order dated September 8, 1977, by reducing the condemnation award from $58,231.20 to $38,820.80, in accordance with the following memorandum: The condemnation award of $58,231.20 which the majority upholds, consists of two separate components: (a) the sum of $38,820.80, based on a value of 80 cents per square foot of the property (which has 48,526 square feet) in its present residential classification, as of the date of vesting; and (b) the sum of $19,410.40, i.e., 40 cents per square foot as damages to claimants for being foreclosed by the condemnation proceeding from instituting a declaratory judgment action to have the present residential zoning of the subject property declared unconstitutional and void, which action had a reasonable probability of success. I disagree with the majority's decision to uphold the

award of $58,231.20, for the following reasons: (1) In my view, the claimants failed to meet their burden of establishing the reasonable probability of success of a lawsuit challenging the present residential zoning of the property; and (2) The prior history of this parcel precludes any further award to the claimants at this point based on a theory of probability of rezoning. Moreover, even assuming, *arguendo,* that the residential zoning of the property could have been successfully challenged in the courts and that claimants were entitled to be compensated for being deprived of that opportunity by virtue of this condemnation proceeding, Special Term's award of a 40 cents per square foot increment based on the probability of rezoning is completely without foundation in the record and must be set aside. The instant condemnation proceeding was instituted by the petitioner, Town of Islip, to acquire, for municipal purposes, a parcel of real property approximately 1.1 acres in area. Title vested in petitioner on December 9, 1974 and a trial was conducted to determine the damages sustained by the claimants, i.e., the owners of the appropriated parcel. The subject parcel is bound on the north by Old Montauk Highway and on the south by Montauk Highway. At the trial, the claimants produced two witnesses who were of the view that the highest and best use of the property, which was then zoned for residential use, was for business development, specifically an office building, and that it was highly probable, but for the condemnation of the property by the town, that the claimants could have obtained a zoning change from the town board to permit the erection of an office building. Based on this approach, the claimants' appraiser reached a value for the subject property as of the date of vesting in the amount of $3 per square foot, for a total of $145,577.52. The appraiser testified that the valuation of $3 per square foot included an increment based on the probability of rezoning. Without that increment, he testified that the land would be worth at most $1 per square foot, or perhaps less, since he did not consider the land marketable without rezoning. The town produced two witnesses who were just as emphatic in stating that the property would not have been rezoned by the town board from residential to business use. In fact, the town had refused to rezone other residential properties in the area and the planning board had recommended denying rezoning of this parcel. Accordingly, the town's appraiser reached a value for the subject property as of the date of vesting of 65 cents per square foot, for a total of about $31,500 for the 48,526 square feet appropriated. Special Term found that the property was unsuitable for residential use, but also found, based on the credible proof, i.e., refusal of the town board to rezone other residential properties in the area as well as the planning board's recommendation to deny rezoning for the subject parcel, that the claimants would not have been successful in attempting to have the town board rezone the property. Nevertheless, Special Term was of the view that the claimants had an alternative method of securing rezoning, i.e., a declaratory judgment by the courts, and that this method which would probably have been successful, was foreclosed by the promptness of the condemnation proceeding, which followed closely after the denial by the planning board of the requested rezoning. In arriving at an award of damages, Special Term concluded that the value of the property, residentially classified, as of the date of vesting, was 80 cents per square foot, for a total of $38,820.80. To this figure, Special Term added an increment of 40 cents per square foot for a total of $19,410.40 to reflect the additional damages suffered by claimants by virtue of being deprived of the opportunity to secure rezoning through a declaratory judgment action. Accordingly, the claimants were awarded a total sum of $58,231.20 as

damages. The law is well settled that it is proper for a court to consider the possibility of a rezoning change where the new use would appreciably influence the market value of the appropriated property (4 Nichols, Eminent Domain [3d ed], § 12.322[1], p 12-637). The test generally applied in cases relying on a potential for rezoning is whether there is a reasonable probability that the zoning might be changed *(Matter of City of New York [Shore-front High School—Rudnick],* 25 NY2d 146; *Masten v State of New York,* 11 AD2d 370, 371, affd 9 NY2d 796). The question of whether there exists a reasonable probability of a change in existing zoning restrictions is a factual one to be determined by the trial court *(Lem v State of New York,* 45 AD2d 805). If the claimants persuade the court of the reasonable probability of a rezoning, the court evaluates the property under the restrictions of the existing zoning and adds an increment based on the impact of the change in zoning upon market value *(Dennis v State of New York,* 24 AD2d 924; 4 Nichols, Eminent Domain [3d ed], § 12.322[1], p 12-657). In the case at bar, the trier of the facts correctly determined, based on the proof adduced before it, that the town board would not have rezoned. Special Term recognized that there is a second avenue that can be used to secure rezoning, i.e., a declaratory judgment action to declare the present zoning unconstitutional. The gravamen of such an action is that the zoning classification "amounts to an unconstitutional exercise of the police power" and that the "zoning restrictions deprived the owner of all reasonable use of the property" *(Matter of Grimpel Assoc. v Cohalan,* 41 NY2d 431, 432). The possibility of a declaratory judgment action being successful may be taken into account during a condemnation proceeding. If the rule were otherwise, public bodies could brazenly deny applications for rezoning merely for the purpose of decreasing land value, or preventing its proper utilization, in order to lower acquisition costs in eminent domain proceedings (see Ann., 9 ALR3d 291, 304-305). In Nichols, Eminent Domain (vol 4 [3d ed], § 12.322[3], p 12-678), it is expressly stated that in a condemnation proceeding "Existing zoning may also be disregarded where there is a showing that the zoning ordinance, if literally applied, results in an arbitrary and unreasonable restraint on the use of the property." In a declaratory judgment action to declare a particular zoning classification as confiscatory as to a particular parcel, the burden is upon the property owner to show beyond a reasonable doubt that each and every use permitted by the ordinance will fail to yield a reasonable return *(Matter of National Merritt v Weist,* 41 NY2d 438, 445; *Matter of Grimpel Assoc. v Cohalan, supra).* Evidence which merely shows that the land would be worth more if it were not for the zoning ordinance is not sufficient to sustain the burden of proving the ordinance unconstitutional. Although I agree with Special Term that the issue of the probability of success of such a lawsuit may be considered in a condemnation proceeding, it is my view that the proof adduced on the issue of probability must be of the same quantum as would be necessary in a declaratory judgment action, and that the claimants herein failed in meeting their burden on this issue. The claimant's first expert, a municipal planner for the Town of Smithtown, admitted that the property immediately adjacent to the subject property was zoned residential and that this classification was not repugnant to the town's master plan. The witness testified that a dozen single-family homes in the immediate vicinity, i.e., one-half to one mile away, which back onto Montauk Highway and were positioned in the same manner as two residential homes would be positioned on the subject parcel, had values of from "$55,000 and up". The petitioner's first expert, a real estate appraiser, testified that the property's highest and best use would be

for the construction of two single-family homes under existing zoning. He testified that the homes could be built and front side and rear yard setback requirements could be met. The petitioner's second expert, the town commissioner of planning, testified that two homes could be built on the parcel. The two homes would be 36 feet apart and they would front on Old Montauk Highway and be between 75 and 100 feet from it. No variances would be necessary. The property owner would have to file a map splitting the parcel into two lots and apply for building permits. In my view, the conclusory testimony of claimants' experts even standing alone, did not satisfy claimants' burden of showing by "dollars and cents" proof that they could not obtain a reasonable return on their property as presently zoned (see *Matter of Crossroads Recreation v Broz,* 4 NY2d 39, 44). Accordingly, they failed to show a reasonable probability that a lawsuit challenging the present zoning of the property would have succeeded. In *Matter of Forrest v Evershed* (7 NY2d 256) the property owners sought a use variance to erect a two-story medical office building on their vacant property. The surrounding neighborhood was residential, except for two nonconforming uses and a synagogue which was adjacent to the property and was a permissive use under the ordinance. At the hearing before the zoning board of appeals one of the property owners argued that no one wanted to build a house next to a public building. In support of this argument, the property owners' expert, a real estate broker, contributed his conclusion that his efforts to sell the property over a period of five years were met by objections to the building next door. In holding that this proof was insufficient to meet the property owners' burden of establishing the prerequisite for the granting of a use variance, the Court of Appeals stated (pp 261-262): "Upon review, a variance may not be sustained unless 'the hardship and its occasion [are] exhibited fully and at large' in the return of the proceedings *(People ex rel. Fordham Manor Ref. Church v. Walsh,* 244 N.Y. 280, 290; see *Matter of Crossroads Recreation v. Broz,* 4 N Y 2d 39). The return in the instant proceeding is clearly deficient in this regard. It indeed reflects the meagerness of the evidence before the Board. The only evidence in the record which bears on the question of 'reasonable return'—the first element of hardship under the *Otto* case *[Matter of Otto v Steinhilber,* 282 NY 71]—was that adduced by intervenor O'Connell and his real estate broker at the hearing before the Board. It was merely asserted that they tried to sell the property which he owned for 40 years but could not. This will not do. In the first place, it was not shown that any diligent and bona fide effort was made to sell the property. We are left to guess the means, if any, that were employed to effect a sale thereof. Intervenors do not tell us whether the property was advertised, and, if so, how; that it was listed with other brokers, or even that a sign was placed on the property to indicate that it was for sale (contrast *Matter of Crone v. Town of Brighton,* 19 Misc 2d 1023). Moreover, the terms and conditions upon which the property was offered for sale are not furnished. For all that appears, the price demanded may have been prohibitive and the terms and conditions of sale unreasonable. Intervenors have not demonstrated that their efforts to sell were in good faith." The proof adduced in the case at bar was similarly deficient in failing to show any evidence regarding good faith attempts to sell the subject property. Instead, the claimants relied on mere conclusions of experts. As the court stated in *Matter of Congregation Beth El of Rochester v Crowley* (217 NYS2d 937, 941): "While the minutes of the hearing include statements of petitioner's counsel that the property had been listed with realtors for about one year, that a sign had been erected on the property, and that the only

*written* offer had come from the Sibarco Company, no *proof* was offered as to the extent of any efforts made by anyone to effect a permitted use sale, the means employed, if any, and the terms and conditions upon which the property was offered; nor, bearing in mind the possibilities of permitted use in district designations 'R-1', 'R-2', 'R-3', 'R-4', as well as 'R-5'—purposely set forth above in principal part, and all applicable to the considered property— does the record include any proof from which it could properly be concluded that a reasonable 'dollars and cents' return could not be obtained under 'each and every' of the many uses permitted under the ordinance. (See the itemized requirements set forth in Crossroads Recreation v. Broz, * * *; and Gerling v. Board of Zoning Appeals of Town of Clay * * *; see also, Saitta v. Malone * * *.) True, an opinion of a realtor was placed before the Board which contained a generalized statement that the plot would not 'attract at this time an owner-developer for a use consistent with present permissive zoning', and his further opinion was supported by another realtor who testified that 'the highest and best use of this site would be a service station', such testimony cannot be held to have supplied the necessity of presenting practically irrefragable proof negativing the full range of permissive possibilities, as required by the Forrest, Crossroads Recreation, Gerling and Saitta cases" (emphasis in original). In any event, quite apart from this failure of proof, it is my view that the prior history of this parcel precludes any award at this point to the claimants based on a theory of probability of rezoning. This parcel was part of a larger tract which was owned by these claimants and which was condemned in 1955 by the State of New York. As a result of that condemnation, these claimants were left with the instant parcel. The claimants' present argument that the configuration of the remainder parcel precludes residential development was also true in 1955. At that time, the claimants had the opportunity to argue that as a result of the condemnation, there had been a depreciation in the value of the remainder which entitled them to consequential damages. It is well established that where part of an owner's tract is taken by an exercise of the power of eminent domain, the owner is not confined to recover for only the part taken but is entitled to recover also for the damage visited upon the area remaining in his title (4A Nichols, Eminent Domain, § 14.2, p 14-36). The measure of such consequential damages is the diminution of market value of the remainder of the property (4A Nichols, Eminent Domain, § 14.21, p 14-53). If these claimants failed to seek an award of consequential damages to the remaining parcel in 1955 at the time of the first condemnation, then they have clearly waived their right to recover such an award at this late juncture, 22 years after the initial taking. On the other hand, if these claimants were successful in 1955 in obtaining an award of consequential damages with respect to this remaining parcel by way of an award of settlement, then they are surely precluded from obtaining a second or double award now based on the probability of the rezoning of this parcel. In my opinion, under these circumstances, the claimants would be limited to the appreciation of the residential value of this parcel since the original taking and nothing more. Accordingly, if the petitioner Town of Islip had effectively raised the prior history of this parcel as an issue in this proceeding, it would have been my position that the claimants would not be entitled to an award greater than the appreciation in value of this residential parcel since the original taking, much less an award based on the possibility of a successful court challenge to its present zoning. However, the town has not raised the issue and accordingly, on this record, the claimants should be limited to an award based on the present residential value of the remainder

parcel. Since that part of the condemnation award made by Special Term which was attributable to the premises in its present residential classification, i.e., 80 cents per square foot, for a total of $38,820.80, is between the town's claim of value, 65 cents, and the claimants' testimony as to value, $1 maximum, that figure should be the total award to which the claimants are entitled. Accordingly, the award should be reduced to $38,820.80. Finally, assuming, *arguendo,* that the claimants are entitled to an increment based on their lost opportunity to successfully challenge the present zoning of the parcel, it is my view that Special Term erred in awarding an increment of 40 cents per square foot. The only evidence adduced on the issue of an increment was that adduced by the claimants, i.e., $2 per square foot. The petitioner refused to concede the validity of this concept and, accordingly, did not submit its own evaluation of an increment. Under these circumstances, Special Term was incorrect in disregarding the value of the increment testified to by claimants and instead fixing a value of the increment in the amount of 40 cents per square foot. Such a valuation has no basis in the record. Since no value as to the increment was offered by the condemnor, the trial court, in the absence of any explanation, should not have made a substantial departure from the owner's valuation (see *1250 Cent. Park Ave. v State of New York,* 58 AD2d 688). If the majority accepts the proposition that the claimants were entitled to an increment, then the matter should be remanded to Special Term so that the town can submit its valuation as to the increment, and a proper determination, based on the various valuations, can then be made (see *1250 Cent. Park Ave. v State of New York, supra).*