OPINION OF THE COURT
Wachtler, J.
In a condemnation case, where the Town of Islip acquired land which at the time of taking was undeveloped but had been restrictively zoned residential by the town, the Supreme Court, after trial, found the property "unsuitable for residence use” and awarded the claimants, its former owners, an increment above, and in addition to, its residential value. The Appellate Division affirmed, with one dissent.
The town and the claimants have cross-appealed to this court. There is no dispute over that portion of the award which represents the residential value of the property as determined by the trial court. Only the increment is in issue. The town urges that the claimants are not entitled to any increment, while the claimants argue that the amount of the increment should be larger than the court allowed.'
Both appeals have been taken in reliance on CPLR 5601 (subd [a], par [i]) which permits an appeal as of right from an Appellate Division order of affirmance when there is a dissent on a question of law in favor of the party taking the appeal. In this case, the dissenter at the Appellate Division, took the position that there was no basis in the record for awarding the claimants any increment. This dissent was favorable only to the town, and the claimants’ cross appeal must be dismissed.[1] Thus we are not concerned with the amount of the increment. The only question properly before us is whether on this record *359 it was error, as the town contends, for the court to grant any increment above the residential value of the property.
In 1973 the claimants owned a parcel of undeveloped land located in the Hamlet of Sayville. The property is slightly larger than an acre and is completely surrounded by public thoroughfares. It is bounded on the south by Montauk Highway, on the north by Old Montauk Highway, on the west by Broadway Avenue and on the east by Old Broadway. The property is long and narrow and irregular in shape. It runs in a straight line along the south boundary for over 500 feet, curves along the northern boundary to a maximum depth of approximately 100 feet, narrowing at each end to a depth of about 30 feet on the west and 40 feet on the east. The zoning in the area includes mixed residential and business uses. Nearby there are restaurants, small businesses, professional offices and residences along the highways which converge on the claimants’ property. The plot belonging to the claimants, however, was zoned residential.
In late 1973 claimants applied to the town for a change of zone from Residential AA to Business I in order to erect a small office building on the site. However, the town planning board recommended that this application be denied and that the town acquire the property in condemnation. When title passed to the town by condemnation in 1974, the property was still zoned residential. The town then contended that compensation to the owners should be limited to the residential value of the property.
At the trial held on the compensation issue, claimants’ experts testified that the property was valuable and best suited for commercial development and that its peculiar location, size and shape made it unsuitable for residential use with little or no market value if offered for sale only as a residential plot. In their opinion these factors, together with the pattern of zoning and development in the area, created a reasonable probability that the property would be rezoned and that they should therefore be awarded an increment above the residential value. They also submitted evidence and estimates as to the market value of the property in light of the potential for rezoning.
The town, on the other hand, introduced proof that in recent years it had consistently refused to "downzone” other properties in the area. It also submitted a plan for residential development of the property which, according to its experts, *360 would satisfy the residential zoning requirements. Thus in the opinion of its experts there was no reasonable probability of a change in zone, and their estimates were limited to the residential value of the property.
The court found that the property located on a small "semieliptical” shaped "island” which could only accommodate homes of a "limited size * * * with little, if any, rear yards” surrounded "on all sides by roads” two of which were main highways, was "unsuitable for residence use”. "This fact” the court noted, "was readily admitted by the supervisor of the town, who, in voting to deny claimants’ application for rezoning just prior to the instant application to condemn, stated: T would not want to raise my kids there though.’ ” The court also found that there was no reasonable probability that the town would have voluntarily rezoned the property upon application, but that the claimants might have been able to obtain the same relief in a court action on the ground that the residential zoning deprived them of "the reasonable use of the property”. Accordingly the court awarded the claimants an increment above the residential value of the property. As noted, the Appellate Division affirmed the findings and determination of the trial court.
An owner whose property has been taken in condemnation is entitled to just compensation (US Const, 5th Amdt; NY Const, art I, § 7, subd [a]). The measure generally is market value at the time of appropriation, that is, the price a willing buyer would have paid a willing seller for the property (County of Erie v Fridenberg, 221 NY 389; Matter of Board of Water Supply of City of N. Y., 277 NY 452; Keator v State of New York, 23 NY2d 337, 339). This appraisal should be based on the highest and best use of the property even though the owner may not have been utilizing the property to its fullest potential when it was taken by the public authority (Matter of County of Suffolk [Firester], 37 NY2d 649, 652; Keator v State of New York, supra, at p 339).
Ordinarily the potential uses the court may consider in determining value are limited to those uses permitted by the zoning regulations at the time of taking (4 Nichols, Eminent Domain [3d ed], § 12.322). When, however, there is a reasonable probability of rezoning, some adjustment must be made to the value of the property as zoned. An increment should be added to this amount if there is a reasonable probability of *361 rezoning to a less restrictive category (Masten v State of New York, 11 AD2d 370, 371, affd 9 NY2d 796; Genesee Val. Union Trust Co. v State of New York, 9 NY2d 795; cf. Matter of County of Nassau [Cohen], 39 NY2d 574). Conversely, the value of the property as zoned should be reduced or subject to a "discount” when the probability is that rezoning will result in the loss of a valuable use (Matter of County of Nassau [Cohen], supra). The theory is that a knowledgeable buyer, recognizing the potential changes in the available uses would make similar adjustments in valuing the property (Masten v State of New York, supra; 4 Nichols, op. cit., § 12.322[1]).
 Thus the reasonable probability of rezoning is a relevant factor in determining the market value of property taken in condemnation. It is most frequently encountered in cases where it is anticipated that the municipality would voluntarily rezone without any prompting from the courts (see Zoning as a Factor in Determination of Damages in Eminent Domain, Ann., 9 ALR3d 291, 309-322). Here, however, it was found that a court action would be necessary to remove the residential zoning restrictions. That prospect may, of course, seem less attractive than the probability that the town might grant an application to change the zone. Nevertheless, to a knowledgeable buyer, the probable invalidity of zoning restrictions, which would otherwise prohibit valuable uses, should enhance the market value of the property to some extent. Thus if it was demonstrated that there was a reasonable probability that a challenge to the zoning regulations could succeed in court, it would be appropriate to grant the claimants some increment above the residential value.[2]
The town concedes that the court was "within its rights” when it considered whether the zoning restrictions would have been vulnerable to a constitutional challenge in a declaratory judgment action. It argues, however, that in determining whether "such an action would have been successful * * * [the court] must make such findings of fact as would have been made by a court actually hearing the declaratory judgment.” In this case it claims that the evidence presented was *362 insufficient "to sustain a finding by the court that the zoning classification was unconstitutional” as applied.
In Matter of Grimpel Assoc. v Cohalan (41 NY2d 431), a declaratory judgment case, the owner claimed that Islip’s Residential AA zoning regulation was unconstitutional as applied to its property. There we noted (at pp 432-433) that we were "presented with affirmed findings of fact that the property was not suitable for residential use” and that these findings were supported by evidence showing that the property as zoned would consist of an " 'island’ surrounded by business operations and major vehicular thoroughfares”, that the residential zoning classification drastically diminished the value of the property and that rezoning would not have a deleterious effect on residential properties in the area. This was held to be sufficient to sustain the owner’s burden, and the determination made by the lower courts, that "the zoning restrictions deprived the owner of all reasonable use of the property” and were therefore unconstitutional as applied (Matter of Grimpel Assoc. v Cohalan, supra, at p 432).
In the case now before us we are also confronted with affirmed findings of fact that the property is "unsuitable for residence use”, supported by evidence showing that the property is a small island surrounded by public highways, that it has commercial value but little or no value as a residential plot, and that a change in zone would not be out of harmony with the surrounding area. The town notes, however, that there was also proof, uncontradicted, that it was possible to place two houses on the property in apparent conformity with the residential zoning requirements. Although this is true, it does not indicate any defect in the court’s determination or the sufficiency of the evidence supporting the determination. It is perhaps physically possible to construct houses on any site. But that does not mean that every site is suitable for residential development.
In sum the similarity of the evidence in this case to the proof in Grimpel is sufficient to show that a constitutional challenge to this same ordinance, as applied to similarly situated property would have, at least, a reasonable probability of success in court. Thus it was not error to award the claimants an increment above the value of the property as zoned.
Accordingly, the order of the Appellate Division should be affirmed.
*363 Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Fuchsberg and Meyer concur.
Claimants’ cross appeal dismissed, without costs.
On petitioner’s appeal: Order affirmed, with costs.

. We note that the claimants also cross-appealed to the Appellate Division and that the Appellate Division dismissed the cross appeal for failure to perfect in accordance with that court’s rules. For the purposes of our jurisdiction the order of dismissal is treated as an affirmance and is therefore also subject to the requirements of CPLR 5601 (subd [a], par [i]) (see Cohen and Karger, Powers of the New York Court of Appeals, § 51). And, we note, the Appellate Division dissenter agreed that claimants’ cross appeal should be dismissed.

. We recognize that in some condemnation cases it has been held that the property should be valued at its highest and best use without any regard to zoning restrictions when the former owners have proven the actual invalidity of the zoning regulations in effect at the time of taking (see, e.g., Business Ventures v Iowa City, 234 NW2d 376 [Iowa]). In this case, however, the claimants only sought an increment for the probability of a change in zone.