In the Matter of Town of Brookhaven, Respondent, v Vera Gold, Also Known as Vera Fiordelisi, Appellant. — In a condemnation proceeding, the claimant Vera Gold (Fiordelisi) appeals from a judgment of the County Court, Suffolk County (Murov, J.), entered September 12, 1980, which awarded her the sum of $13,000, plus interest, for the property condemned and from a resettled judgment of the same court, dated December 15, 1980. Appeal from the judgment dismissed. The judgment was superseded by the resettled judgment. Resettled judgment modified, on the law and the facts, by increasing the award from $13,000 to $26,000. As so modified, resettled judgment affirmed. The claimant is awarded one bill of costs. The land which is the subject of this appeal was acquired in this condemnation proceeding by the Town of Brookhaven on May 10, 1974. Lot No. 9 fronts on both Long Island Sound on the north and Mount Sinai Harbor on the south, but is bisected by Harbor Beach Road which runs east and west. Parcel No. 10 is located between Harbor Beach Road and Mount Sinai Harbor and is contiguous to the eastern border of Parcel No. 9, which is the portion of Lot No. 9 located between Harbor Beach Road and Mount Sinai Harbor. The combined Mount Sinai Harbor frontage of Parcels Nos. 9 and 10 was 290 feet. The Long Island Sound frontage of Lot No. 9 was 100 feet. The claimant's total holding on both sides of Harbor Beach Road was approximately 60,600 square feet. The taking was of Parcel No. 9 (which, as noted, was that portion of Lot No. 9 located south of Harbor Beach Road), and

of Parcel No. 10, which was adjacent to Parcel No. 9, and thus also located south of Harbor Beach Road. Accordingly, the condemnation purported to be of claimant's subject Mount Sinai Harbor holdings (a total of 28,600 square feet) and not of her 32,000-square-foot Long Island Sound landholding. It appears from the evidence that, in 1953, Lot No. 9, which had been improved with a residence, and which, as noted, had a double waterfront, was conveyed to Edward Gold and his wife (the claimant herein). In 1962 the claimant acquired title to Parcel No. 10 and, in 1973, upon her husband's death, she became sole owner of Lot No. 9 as well. The improvement on the Long Island Sound portion of Lot No. 9 was a two-story contemporary style house which was completely renovated in 1971. From the house there was a view of both Long Island Sound and Mount Sinai Harbor. Subsequent to their 1953 purchase of Lot No. 9, the Golds used the house as a summer home and thereafter they moved in and for seven years used it as a permanent residence, making use of both the Long Island Sound and Mount Sinai Harbor (Parcels Nos. 9 and 10) frontage. At the latter frontage they moored their boat and kept a dinghy. There was "gunning" or duck hunting on the properties south of Harbor Beach Road — "all the time" — and the Gold family also fished off the Mount Sinai frontage. Some time prior to the subject condemnation, the Golds offered their entire subject Lot No. 9 and Parcel No. 10 holdings for sale, i.e., the property on *both* sides of Harbor Beach Road, and advertised that the south side of the property was available for private mooring and water rights. The claimant's appraiser, in effect, treated the entire Lot No. 9 (that is, the portions of Lot No. 9 both north and south of Harbor Beach Road), and Parcel No. 10, as a single entity. He reported the property to be "a double waterfront plot" and stated: "The entire 'Gold Holding' comprised a unique parcel of both Sound and Harbor frontages offering a complete package of total waterfront recreation encompassing both bathing and boating; the latter only being possible from the Harbor side * * * The value prior to the taking considers both sides of Harbor Road as one parcel." The claimant's appraiser concluded that the taking was a *partial* acquisition. Utilizing the market data approach and setting forth a "before and after" study, he concluded that the Parcels Nos. 9 and 10 taking had resulted in the claimant sustaining total damages of $26,000, consisting of direct damages of $21,645 for the 28,600-square-foot taking of the portions south of Harbor Beach Road, and $4,355 severance damages to the 32,000-square-foot "remainder" Long Island Sound portion of Lot No. 9 north of Harbor Beach Road. The town's appraiser, however, pointing out that Lot No. 9 is divided by Harbor Beach Road, treated the Long Island Sound portion of Lot No. 9 (improved with the residence) as not being contiguous to the portion (Parcel No. 9) south of Harbor Beach Road. He treated the parcels actually taken as "separate economic units" and valued them as "separate parcels". He found that the taking was a *full* taking (of the Mount Sinai Harbor landholdings) and not a partial taking that had left the Long Island Sound landholdings as a remainder. Accordingly, he concluded that there were no severance or consequential damages to the Long Island Sound portion of Lot No. 9 and that the taking had caused the claimant direct damages only. Using the "direct sales comparison approach", he reported that the direct damages were $4,800 for the Parcel No. 9 Mount Sinai Harbor holding and $6,700 for Parcel No. 10, a total of $11,500. It is to be noted, however, that the town's expert reported: "For the subject property therefore, it is my opinion, that the highest and best use consistent with it's [sic] present residential zoning within existing zoning and sanitary code restrictions, and in conformity with the adjoining properties, would be it's [sic] preservation in a natural state or, use for non-profit recreational purposes such as bathing or access to a boat mooring, etc. The

favorable location of the property on the sheltered north shore of Mount Sinai Harbor makes this a logical use." Also of significance is that the town's expert's Comparable Sale No. 1 fronted on *both* Long Island Sound and Mount Sinai Harbor, and also was bifurcated by Harbor Beach Road. The town's expert, having treated the land taken from the claimant as having only Mount Sinai Harbor frontage, adjusted his Sale No. 1 *downward* by a 25 cents per square foot factor for the inferior location of the claimant's ("single" waterfront) property. In its decision, the trial court took into consideration the impact of the Tidal Wetlands Act (ECL art 25), and concluded that "the Act drastically reduced the uses to which the lands in question could be put to use." Although the town's expert would allow direct damages only and did not set forth a "before and after" study encompassing the portion of Lot No. 9 north of Harbor Beach Road, the trial court implicitly agreed with the claimant's "single entity, partial taking" theory when it stated — correctly — that: "Furthermore, as a general rule, the measure of damages for a partial taking, which is the case here, is the difference between the property's value before condemnation and the value of the remainder afterward (*McDonald v State of New York,* 42 NY2d 900 * * * *Acme Theatres v State of New York,* 26 NY2d 385)." Notwithstanding its conclusion that at bar there had been a partial taking, the trial court noted that after the subject 1980 trial, in the presence of representatives of both parties to the action, it "physically inspected the taken property and the lands in proximity to it" and concluded from that 1980 inspection of the land and 1980 harbor activities that the claimant had not established that the 1974 taking had caused severance damages. Taking cognizance of the alleged impact on a buyer's mind of the Tidal Wetlands Act, and "all of the evidence", the court at Special Term concluded that the claimant's direct damages were $13,000 and directed an award for that amount together with appropriate interest. In our view, the evidence clearly established that even though Lot No. 9 was bifurcated by a road, there was a "unity of title and unity of use" with respect to Lot No. 9 north and south of Harbor Beach Road, and Parcel No. 10 (see *Erly Realty Dev. v State of New York,* 43 AD2d 301, mot for lv to app den 34 NY2d 515; *Strong v State of New York,* 38 AD2d 241, 244) so as to require that they be treated as a single unique entity, constituting a "complete package of total waterfront recreation". Thus, on the facts of this case, there was a partial taking requiring that damages be measured by finding the difference between the fair market value of the whole before the taking and the fair market value of the remainder after the taking (see *Acme Theatres v State of New York,* 26 NY2d 385; *Matter of City of New York [Fourth Ave.],* 255 NY 25; see, also, *Strong v State of New York, supra*). Accordingly, we find the town's expert's appraisal report to be fatally defective. On the other hand, the appraisal of the claimant's expert is fully supported by the evidence. Finally, although the town appraiser's report notes local zoning and sanitary codes, the Tidal Wetlands Act (ECL art 25) was neither mentioned nor considered by either appraiser in his written appraisal report and that issue should not have been taken into consideration by the trial court (see 22 NYCRR 678.1). Under all the circumstances, the award should be modified by increasing it from $13,000 to $26,000. Titone, J. P., Lazer, Brown and Niehoff, JJ., concur.