■ In the Matter of City of New York, Respondent, v Jamaica Arms Hotel, Inc., Appellant. [789 NYS2d 271]—

In an eminent domain proceeding, inter alia, to condemn certain real property, in which Jamaica Arms Hotel, Inc., made a claim to recover compensation for the taking, the claimant, Jamaica Arms Hotel, Inc., appeals, on the ground of inadequacy, from a final decree of the Supreme Court, Queens County (Thomas, J.), entered July 3, 2003, which, upon a decision of the same court dated October 21, 2002, made after a nonjury trial, awarded it the principal sum of only $2,864,000 as just compensation for the taking.

Ordered that the final decree is modified, on the facts and as matter of discretion, by increasing the amount of the award from the principal sum of $2,864,000 to the principal sum of $3,996,250; as so modified, the final decree is affirmed, with costs to the claimant.

The property at issue is a residential hotel with over 90 units comprised of one or two rooms, and one three-room unit. The units each have private bathrooms and a kitchen area with a refrigerator and sink. For several years, the City of New York rented the units to provide emergency housing for homeless families. In 1990 the City licensed the facility and operated it as a tier II homeless shelter providing housing and social services. In 1992 the City condemned the property.

The claimant's appraiser determined that the highest and best use of the property was as a commercially-operated hotel for the homeless, the use to which the property had been put prior to the license. The City's appraiser determined that the highest and best use of the property was as rental apartments. The Supreme Court agreed with the City and made its condemnation award based almost entirely on the value set forth in the City's appraisal.

"The determination of the highest and best use of a property must be based upon evidence of a use which reasonably could or would be made of it in the near future. . . . A use which is no more than a speculative or hypothetical arrangement in the mind of the claimant may not be accepted as the basis for an award" (*Matter of HBP Assoc. v County of Orange,* 277 AD2d 237 [2000] [citations and internal quotation marks omitted]). We agree with the Supreme Court that, as the City argues, the highest and best use for the property was as rental apartments. The property was in an area zoned residential, each unit had an individual bathroom, and complete kitchen facilities could easily be installed (*see Matter of Town of Islip [Mascioli],* 49 NY2d 354, 360 [1980]; *Matter of City of New York [Broadway Cary Corp.],* 34 NY2d 535, 536 [1974]; *Yaphank Dev. Co. v County of Suffolk,* 203 AD2d 280, 281 [1994]). At the time of condemnation in July 1992, the property was being used as a tier II homeless shelter under a license from the City. Although the property had been used as a commercially-operated hotel for the homeless in the past, the City had determined to eliminate the use of privately-owned hotels as transitional housing for homeless families by 1993 (*see* Local Law No. 19 [1988] of City of New York), and had implemented the use of nonprofit facilities to provide emergency housing.

Furthermore, while the award to the claimant generally was within the range of the expert appraisal testimony, was supported by the record, and was adequately explained (*cf. Estate of Dresner v State of New York,* 262 AD2d 274 [1999]), we depart from the Supreme Court's calculation in the following respects. The evidence supports an increase over the value the Supreme Court assigned to the rental income for the subject apartments. The Supreme Court's assignment was based on the City's appraisal, which admittedly was on the "low end of the indicated rental range." Specifically, the record supports a rental income of $550 (as opposed to $500) for the one-room units (39 in total), $750 (as opposed to $650) for the two-room units (53 in total), and $1,000 (as opposed to $700) for the three-room unit (one). With the foregoing adjustment, the annual rent total is $746,400, less the three per cent reserve for vacancies, as provided in the City's appraisal, for an effective gross income (hereinafter EGI) of $724,008. This leads to a corresponding adjustment on the expense side in the figure for management fees (4% of the EGI), from $25,400 to $28,960. Finally, the evidence warrants an adjustment in the capitalization rate from 11.5% (the figure the Supreme Court applied) to 10%. In all other respects, we agree with the Supreme Court's assessment. With the foregoing adjustments, the award should be in the

principal sum of $3,996,250, and we modify accordingly. H. Miller, J.P., Adams, Crane and Spolzino, JJ., concur.