■ In the Matter of COUNTY OF ORANGE, Respondent, v MONROE BAKERTOWN ROAD REALTY, INC., Appellant, and VILLAGE OF KIRYAS JOEL, Intervenor-Respondent. [12 NYS3d 573]—

In a condemnation proceeding, Monroe Bakertown Road Realty, Inc., appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Orange County (Brands, J.), entered April 8, 2013, as, upon a decision of the same court dated January 16, 2013, made after a nonjury trial, is in its favor and against the County of Orange in the principal sum of only $33,000.

Ordered that the judgment is reversed insofar as appealed from, on the facts, with costs, and the matter is remitted to the Supreme Court, Orange County, for further proceedings consistent herewith.

In this partial taking condemnation proceeding, the undeveloped property at issue is located in the Village of Kiryas Joel and consisted of 70.70 acres prior to the taking, and 69.23 acres after the taking. Both the claimant, Monroe Bakertown Road Realty, Inc. (hereinafter Monroe Bakertown), and the

petitioner, County of Orange, agreed that high density housing was the highest and best use of the subject property. However, at a nonjury trial, Monroe Bakertown and the County offered opposing evidence as to the density and scope of the housing project that could be built on the property. The appraiser for Monroe Bakertown testified that he employed a comparable sales approach that analyzed three sales of vacant land within the Village which had taken place in the three years prior to his appraisal and had been approved for multi-family residential units. After making various adjustments to those sales prices based on time, location, size, zoning, and topography, the appraiser valued the entire property, prior to taking, at $27,150,000, and after taking, at $26,050,000, or a difference of $1,100,000.

The County's appraisal was also based on a comparable sales methodology, but it analyzed four recent sales of vacant land located outside the Village limits. After adjusting sales prices of the comparables based on varying factors, the County appraiser arrived at a value for the entire property, before the taking, at $1,555,400, and a value of the remaining property, after the taking, at $1,522,400, or a difference of $33,000. The County also presented the testimony of a County Department of Health (hereinafter DOH) engineer, which the trial court credited, who testified that the DOH would not have issued a permit allowing Monroe Bakertown's asserted 18-unit per acre housing project on the subject property because the Village's water supply was inadequate for such a project. In its decision following the nonjury trial, the Supreme Court concluded that "[t]he lack of adequate water supply is a predominate factor which cannot be disregarded and leads this court to accept the evaluation placed on the property by the County of Orange." Based on this conclusion, the court rejected Monroe Bakertown's appraisal, accepted the appraisal by the County, and entered judgment in favor of Monroe Bakertown and against the County in the principal sum of $33,000 as damages for the taking of the parcel. We reverse.

When private property is taken for public use, the condemning authority must "compensate the owner 'so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred' " (*Matter of City of New York [Kaiser Woodcraft Corp.]*, 11 NY3d 353, 359 [2008], quoting *City of Buffalo v Clement Co.*, 28 NY2d 241, 258 [1971]; *see* US Const Fifth Amend; NY Const, art I, § 7; *520 E. 81st St. Assoc. v State of New York*, 99 NY2d 43, 47 [2002]; *Rose v State of New York*, 24 NY2d 80, 87 [1969]; *Matter of Metropolitan*

*Transp. Auth. [Washed Aggregate Resources, Inc.]*, 102 AD3d 787, 789 [2013]). Where, as here, there is a partial taking of real property, "the measure of damages is the difference between the value of the whole before the taking and the value of the remainder after the taking" (*Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.]*, 102 AD3d at 789; *see Chester Indus. Park Assoc., L.P. v State of New York*, 103 AD3d 827 [2013]; *Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc.*, 95 AD3d 1027, 1029 [2012]; *Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC*, 74 AD3d 804, 805 [2010]). "The measure of damages must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time" (*Matter of Board of Commr. of Great Neck Park Dist. of Town of N. Hempstead v Kings Point Hgts., LLC*, 74 AD3d at 805; *see Matter of Rochester Urban Renewal Agency [Patchen Post]*, 45 NY2d 1, 8 [1978]; *Matter of Village of Haverstraw [AAA Electricians, Inc.]*, 114 AD3d 955 [2014]; *Matter of Metropolitan Transp. Auth. [Washed Aggregate Resources, Inc.]*, 102 AD3d at 789-790). The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future (*see Matter of City of New York [Broadway Cary Corp.]*, 34 NY2d 535 [1974]; *Yaphank Dev. Co. v County of Suffolk*, 203 AD2d 280 [1994]).

Here, the evidence demonstrated, and the parties agreed, that a high density, multi-family residential development was the highest and best use of the subject property. However, there was disagreement as to whether such use was reasonably possible at the time of the taking or could have been achieved within the reasonably near future. Although the County's witness testified that the County would not have permitted a high density residential project on the property due to the lack of available water, proof was adduced that the Village had undertaken efforts to increase its water well supply capacity. Additionally, there was testimony that the Village had secured funding and had begun the approval process to connect its water supply to the New York City Aqueduct reservoir system.

Given this testimony, the record does not support a conclusion that the subject property could never have been developed or that it would have remained vacant land (*see generally, Spriggs v State of New York*, 54 AD2d 1080 [1976]). More importantly, the crucial issue to be determined in evaluating the subject property is not whether the water issue would be

conclusively resolved and, concomitantly, whether the County would approve a high density residential development, but rather how such uncertainty would figure into the marketplace. In determining the valuation of condemned land, probabilities of a change or changes in critical circumstances affecting the subject property " 'may be shown to have an actual effect on an existing market' " (*Masten v State of New York*, 11 AD2d 370, 372 [1960], *affd* 9 NY2d 796 [1961], quoting *Valley Stream Lawns v State of New York*, 9 AD2d 149, 152 [1959]). Here, the uncertainty over water availability and governmental approval would, of course, affect the price an open market buyer would be willing to pay for the property. However, by rejecting the appraisal of Monroe Bakertown and simply adopting the County's appraisal, the Supreme Court failed to adequately take into account how the market would factor the water supply uncertainty and governmental approval issues into the selling price of this property. This is especially true in view of the evidence that the Village had taken steps to address its water capacity issue. Accordingly, condemnation valuation should be determined in accordance with the "theory . . . that a knowledgeable buyer, recognizing the potential changes in the available uses [for the property] would make similar adjustments in valuing the property" (*Matter of Town of Islip [Mascioli]*, 49 NY2d 354, 361 [1980]; *see Masten v State of New York*, 11 AD2d at 371).

We further observe that the Supreme Court's determination that Monroe Bakertown's proposal for the subject property would not have been approved by the County was more akin to a rejection of the size of the residential development as too aggressive and, thus, should have only necessitated a reduction of Monroe Bakertown's appraised value. However, the court's wholesale rejection of such appraisal is, in effect, reflective of an inappropriate highest and best use for the property (*see e.g. Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc.*, 95 AD3d 1027 [2012]), despite the fact that the County's own appraisal report stated that "the subject [property] is considered to have good development potential." In other words, although the large scope and high density of Monroe Bakertown's suggested residential development was not reasonable in light of the water supply issue in the area at the time of the taking, there was evidence that a smaller development may have been feasible in the near future. Accordingly, for this additional reason, the Supreme Court should not have simply defaulted to the low valuation put forth by the County (*cf., Matter of Metropolitan Transp. Auth. [Longridge Assoc., L.P.]*, 122 AD3d 856 [2014]).

Finally, even assuming that the County would not have approved any project on the property due to the water supply issue, a condemnation award must be based upon the evidence offered by the party prevailing on the use question "with such adjustments as the evidence will support" (*Crosby v State of New York*, 54 AD2d 1064, 1065 [1976]; *see Gyrodyne Co. of Am., Inc. v State of New York*, 89 AD3d 988 [2011]; *Matter of City of New York*, 94 AD2d 724 [1983], *affd* 61 NY2d 843 [1984]; *Elmore Realty v State of New York*, 44 AD2d 621 [1974]; *Nature Conservancy v State of New York*, 41 AD2d 782 [1973]; *Stiriz v State of New York*, 26 AD2d 964 [1966]), and comparable sales "must relate to property in the vicinity '*similar* to the property taken'" (*Matter of City of New York [Atl. Improvement Corp.]*, 28 NY2d 465, 472 [1971], quoting *St. Agnes Cemetery v State of New York*, 3 NY2d 37, 44 [1957]). Here, the County's valuation was based on vacant land comparables which were located outside of the Village, which the evidence demonstrated is unique in character and land valuation. Indeed, the scarcity of available land within the Village's borders, coupled with its increasingly expanding population, has resulted in premium land valuation. Under these circumstances, the utilization of vacant land sales outside of the Village did not accurately reflect the value of the subject property.

Therefore, we conclude that the facts adduced at trial do not warrant the determination that the appraised valuation submitted by the County had to be accepted. For similar reasons, in its valuation, the Supreme Court was not bound to accept Monroe Bakertown's appraisal. Accordingly, we remit the matter to the Supreme Court, Orange County, to recalculate the value of the subject property in accordance with this decision and order, and for the entry of an appropriate amended judgment thereafter. Balkin, J.P., Dickerson, Sgroi and Cohen, JJ., concur.