Appeal from a judgment of the Supreme Court, Nassau County (Thomas A. Adams, J.), dated June 30, 2016. The judgment, upon a decision of that court entered December 23, 2015, made after a nonjury trial, awarded the claimants the principal sum of $20,700,000 as just compensation for the taking of their property.
 

 Ordered that the judgment is reversed, on the law, with costs, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings consistent herewith, and for the entry of an appropriate judgment thereafter.
 

 On September 5, 2003 (hereinafter the vesting date), the Town of Oyster Bay condemned a 14.03-acre parcel of land located at 55 Motor Avenue in Farmingdale (hereinafter parcel 1) in order to expand an abutting public park. At the time, parcel 1 was owned by the claimants, who are the respondents on this appeal, and was designated on the Nassau County Land and Tax Map as Section 48, Block 518, Lot 327. The claimants owned two other parcels of land that were contiguous with parcel 1: an approximately 7.51-acre parcel that was to the east of parcel 1 (hereinafter parcel 2), and an approximately 8.7-acre parcel of land that was to the east of parcel 2 (hereinafter parcel 3), which were identified on the Nassau County Land and Tax Map as Section 48, Block 518, Lot 329 on the vesting date, and were not acquired by the Town at that time. Parcel 1, parcel 2, and parcel 3 comprised approximately 30.49 acres (hereinafter collectively the subject property). The subject property had previously been used for an aircraft parts manufacturing and metal finishing facility, and was bordered on the south by Motor Avenue, which had one driving lane in each direction as well as a turning lane, on the north by the Long Island Rail Road tracks, on the west by a park, and on the east by Main Street. In 1986, as a result of contamination, the subject property was designated a federal superfund site. In March 2002, the United States Environmental Protection Agency issued a record of decision selecting a remediation for the subject property. As of the vesting date, there was a water treatment facility located on parcel 1 that was used to remediate the ground water, and various industrial buildings located on parcels 2 and 3.
 

 In April 2002, one of the claimants, 55 Motor Avenue Company, LLC, entered into a ground lease with the Stop & Shop Supermarket Company (hereinafter Stop & Shop) to build and operate a store on parcel 3. The subject property was zoned Ll-light industrial. A special use permit was required to operate the Stop & Shop supermarket on parcel 3, and would be required to operate a retail development on parcel 1 and parcel 2. In 2008, a special use permit was granted to operate a supermarket on parcel 3.
 

 In August 2006, the claimants filed a claim for just compensation, seeking direct damages for the loss of parcel 1, and consequential damages for parcels 2 and 3. At a nonjury trial on the issue of compensation, held between -October 27, 2014, and June 10, 2015, the claimants proffered several redevelopment options, or conceptual plans, for the subject property. One of the plans entailed a 325,567 square foot, large scale, multi-tenant retail development of the subject property (hereinafter CP-1). CP-1 depicted, among other things, three new retail buildings totaling 244,464 square feet on parcels 1 and 2, and an 81,103 square foot supermarket on parcel 3. The claimants’ expert planner opined that there was a reasonable probability that the claimants would have obtained a special use permit for retail use on parcels 1 and 2. In support, he listed all of the purported factors that the Town Board would consider under the applicable zoning ordinance to determine whether to grant a special use permit, and opined that CP-1 complied with all of those factors. The claimants also proffered an expert appraiser, who opined that the highest and best use of the subject property as of the vesting date was for the development of a retail complex at the maximum allowable density, which was 332,036 square feet. He found that CP-1 was “ideally suited to accommodate big box” retail. The expert valued the subject property as a single economic unit, and found that the market value of parcel 1 on the vesting date was $20,700,000. He further found that the claimants sustained $19,450,000 in direct damages to parcel 1, and $1,250,000 in severance damages to parcels 2 and 3.
 

 In response, the Town asserted that the claimants failed to demonstrate a reasonable probability that a special use permit would have been granted for retail use on parcels 1 and 2, and proffered an expert opinion that the highest and best use of parcels 1 and 2 was a “low density” industrial use, such as a warehouse or research and development building, which were as of right uses in the LI-light industrial zoning district. The Town’s expert appraiser did not include parcel 3 in his appraisal because he found that there was no unity of use between parcels 1 and 3 on the vesting date as a result of the Stop & Shop lease. The expert opined that the market value of parcel 1 as an industrial use was $3,270,000, and that the claimants sustained no consequential damages to parcel 2 as a result of the taking.
 

 In a decision entered December 23, 2015, the Supreme Court found that parcels 1, 2, and 3 should be valued as one economic unit, and that the highest and best use of the subject property on the date of the taking “was retail development of the maximum allowable density . . . so as to accommodate big box retailers.” The court accepted the claimants’ market value of the subject property as a retail development, and awarded the claimants, inter alia, the principal sum of $20,700,000, minus an advance payment that the Town had previously made to the claimants in the sum of $3,269,891, plus interest. In the judgment appealed from, the claimants were awarded the principal sum of $20,700,000. The Town appeals.
 

 “The bedrock of eminent domain law is the principle that, when private property is taken for public use, the condemning authority must ‘compensate the owner so that he may be put in the same relative position, insofar as this is possible, as if the taking had not occurred’ ” (Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 865 [2016], quoting Master of County of Orange v Monroe Bakertown Rd. Realty, Inc., 130 AD3d 823, 824 [2015]). Where there is a partial taking of land, courts usually apply a “before and after” rule, which measures damages as the difference between the fair market value of the whole property before the taking and the fair market value of the remainder of the property after the taking (see Acme Theatres v State of New York, 26 NY2d 385, 388 [1970]; Matter of County of Orange v Monroe Bakertown Rd. Realty, Inc., 130 AD3d at 825; Lerner Pavlick Realty v State of New York, 98 AD3d 567, 568 [2012]). “To establish the propriety of valuing two separate parcels of property as a single economic unit for the purpose of awarding condemnation damages, ‘the property owner must show that the subject parcels are contiguous, and that there is a unity of use and of ownership’ ” (90 Front St. Assoc., LLC v State of New York, 79 AD3d 708, 709 [2010], quoting Johnson v State of New York, 10 AD3d 596, 597 [2004]; see Matter of Town of Brookhaven v Gold, 89 AD2d 963, 965 [1982]). “In condemnation cases, the authority of this Court to review findings of fact after a nonjury trial is as broad as that of the trial court” (Matter of Mazur Bros., Inc. v State of New York, 97 AD3d 826, 828 [2012]), and it “ ‘may render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses’ ” (id. at 828, quoting BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp., 89 AD3d 883, 884 [2011]).
 

 Here, there was no dispute that all three parcels that made up the subject property were physically contiguous. Additionally, contrary to the Town’s assertion, there was support in the record for the Supreme Court’s finding that there was unity of ownership among the three parcels of land. However, the claimants failed to demonstrate that there was unity of use between parcel 1 and parcel 3 on the vesting date. Approximately 17 months before the vesting date, 55 Motor Avenue Company, LLC, entered into a ground lease with Stop & Shop for parcel 3. The lease included a non-integration clause, which granted Stop & Shop the right to “erect a fence” around parcel 3 “as may be reasonably necessary to prevent” any “persons occupying or having business with any other land adjacent to or near” parcel 3 from using any portion of parcel 3. Stop & Shop was also permitted to “initiate and prosecute legal proceedings” and to “take such other action as may be reasonably necessary to prevent such use.” In accordance with the terms of the lease, Stop & Shop elected to build a fence around parcel 3. Accordingly, the court erred in determining that parcel 3 should be valued as one economic unit with parcels 1 and 2 (see City of Buffalo v Goldman, 63 AD2d 828 [1978]; Matter of City of New York, 32 AD2d 1059 [1969]).
 

 The Supreme Court also erred in determining that the highest and best use of parcel 1 and parcel 2 on the date of the taking was retail use at the maximum allowable density. “The measure of damages in a condemnation case ‘must reflect the fair market value of the property in its highest and best use on the date of the taking, regardless of whether the property is being put to such use at the time’ ” (Matter of 730 Equity Corp. v New York State Urban Dev. Corp., 142 AD3d 1087, 1088 [2016], quoting Chester Indus. Park Assoc., LLP v State of New York, 65 AD3d 513, 514 [2009]). The determination of highest and best use must be based upon evidence of a use which reasonably could or would be made of the property in the near future (see Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536 [1974]; Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863 [2016]; Yaphank Dev. Co. v County of Suffolk, 203 AD2d 280, 281 [1994]; Matter of Consolidated Edison Co. of N.Y. v Neptune Assoc., 190 AD2d 669 [1993]). “Ordinarily the potential uses the court may consider in determining value are limited to those uses permitted by the zoning regulations at the time of taking” (Matter of Town of Islip [Mascioli], 49 NY2d 354, 360 [1980]). However, when there is a reasonable probability of rezoning, some adjustment must be made to the value of the property to reflect that fact (see id. at 360-361; Matter of Town of Oyster Bay [BPJ Mar. Corp.], 139 AD3d 741 [2016]).
 

 Here, the claimants failed to establish that there was a reasonable probability that they would have been granted a special use permit to develop parcels 1 and 2 as a large-scale multi-tenant retail development in accordance with CP-1. To demonstrate a reasonable probability that they would have been granted a special use permit for a retail development at the maximum allowable density, the claimants proffered the testimony and report of their expert planner. The expert planner did not review the history of any special use permit applications to the Town Board, or reference any large-scale retail developments that were located on the vesting date in the immediate area of the subject property. Rather, he indicated that there were a variety of uses surrounding the subject property, including “several industrial uses” to the west of the subject property, a “cluster of commercial uses” to the east of the subject property, and “smaller commercial businesses” to the south of the subject property, but most of the “nearest large scale retail facilities” were located approximately 2.5 miles away from the subject property. As a result, the expert planner’s opinion that, inter alia, the retail use depicted in CP-1 was an “appropriate” and “harmonious” redevelopment approach, the location and size of the subject property warranted “the level of redevelopment intensity” depicted in CP-1, and a less “intensive development” would appear “out of scale,” was conclusory and insufficient to demonstrate a reasonable probability that a special use permit would be granted (see J.W. Mays, Inc. v State of New York, 300 AD2d 545, 547 [2002]; Rebrug Corp. v State of New York, 42 AD2d 801 [1973]).
 

 Additionally, the special use permit that was granted in 2008 for the Stop & Shop to operate on parcel 3 did not provide sufficient evidence that, as of the vesting date, there was a reasonable probability that the Town Board would have granted a special use permit for big box retail development on parcels 1 and 2 (see Ridgefield Realty Corp. v State of New York, 42 AD2d 807 [1973]). The Stop & Shop special use permit was granted almost five years after the vesting date, and there was evidence that parcels 1 and 2 would have required greater review and scrutiny because they were more seriously contaminated than parcel 3. Moreover, parcels 1 and 2 were more than twice the size of parcel 3, and the square footage of the retail buildings that were depicted in CP-1 and proposed to be built on parcels 1 and 2 were more than three times the size of the square footage of the supermarket on parcel 3. Accordingly, there was insufficient evidence in the record to support the Supreme Court’s finding that the highest and best use of parcels 1 and 2 on the date of the taking was a retail development of the maximum allowable density. In contrast, the Town presented sufficient evidence to demonstrate that the highest and best use of parcels 1 and 2 on the date of the taking was a light industrial development in accordance with the LI-light industrial zoning district.
 

 The parties’ remaining contentions either are improperly raised for the first time on appeal or need not be reached in light of our determination.
 

 Accordingly, in considering “the paramount constitutional requirement of just compensation” (Guptill Holding Corp. v State of New York, 23 AD2d 434, 437 [1965]), we reverse the judgment and remit the matter to the Supreme Court, Nassau County, to determine, based upon the evidence offered by the Town, the fair market value of parcel 1 with a highest and best use of light industrial development, considering such adjustments as the evidence will support, and whether parcel 2 sustained any consequential damages when its proposed highest and best use was industrial.
 

 Austin, J.P., Roman, Sgroi and Brathwaite Nelson, JJ., concur.