Matter of Oakwood Beach Bluebelt - Stage 1 v Yeshivas Ch'San Sofer, Inc. (2018 NY Slip Op 06246)





Matter of Oakwood Beach Bluebelt - Stage 1 v Yeshivas Ch'San Sofer, Inc.


2018 NY Slip Op 06246


Decided on September 26, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 26, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
REINALDO R. RIVERA
SYLVIA O. HINDS-RADIX
ANGELA G. IANNACCI, JJ.


2015-10724
 (Index No. 4009/09)

[*1]In the Matter of Oakwood Beach Bluebelt - Stage 1. City of New York, appellant, 
v
Yeshivas Ch'San Sofer, Inc., respondent.


Zachary W. Carter, Corporation Counsel, New York, NY (Rochelle Cohen, Michael Chestnov, and Adam Dembrow of counsel), for appellant.
Goldstein, Rikon, Rikon & Houghton, P.C., New York, NY (Michael Rikon and Joshua Rikon of counsel), for respondent.



DECISION & ORDER
In a condemnation proceeding, the condemnor, City of New York, appeals from an order, judgment, and fourth separate and partial final decree (one paper) of the Supreme Court, Richmond County (Wayne P. Saitta, J.), dated August 28, 2015. The order, judgment, and fourth separate and partial final decree, insofar as appealed from, upon a decision of the same court dated June 10, 2015, made after a nonjury trial, finding that the value of the subject property was $10,100,000, awarded the claimant the principal sum of $10,100,000 as just compensation for the taking of its property.
ORDERED that the order, judgment, and fourth separate and partial final decree is modified, on the law and the facts, by reducing the award from the principal sum of $10,100,000 to the principal sum of $3,165,513; as so modified, the order, judgment, and fourth separate and partial final decree is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Richmond County, for the entry of an appropriate amended order, judgment, and fourth separate and partial final decree.
This condemnation proceeding concerns an approximately seven-acre plot of land, consisting of six tax blocks. In the early 1980s, the subject property was donated to the claimant by separate donors or sponsors in separate parcels for the purpose of constructing a yeshiva. In 1985, the subject property was mapped as a wetland by the New York State Department of Environmental Conservation (hereinafter the DEC). When the claimant was notified in August 1985 that the property had been mapped as a wetland, the claimant sought to procure substitute property, but was financially unable to do so due to a combination of rising property costs and the lack of a suitable location for its space specifications. The claimant applied to the Freshwater Wetlands Appeals Board (hereinafter the FWAB) for a hardship exemption from the wetlands designation. The FWAB granted the hardship exemption in January 1991. The FWAB noted in its decision and order granting the exemption that the claimant "received help from an architect to plan for the use of the space," which plans consisted of the construction of a 53,000-square-foot facility. The facility was to have 15,000 square feet for classrooms, an 8,000 square foot synagogue, 20,000 square feet for a playground and park, and 10,000 square feet for outdoor lecture space, plus additional space in an [*2]unspecified size for student and faculty housing. In April 1991, on the claimant's request for a rehearing, the FWAB issued a decision and order removing any "implied restriction on limiting the Yeshiva's development to 53,000 square feet." However, development did not proceed, and the claimant did not file the appropriate applications for development, including the additional housing.
This hiatus in development extended for a period of more than 10 years, between the permit appeals in 1993 and implementation of a one year moratorium on the issuance of permits for development in certain freshwater wetland areas by the commissioner of the DEC in 2003. The moratorium was extended until 2005, when the Department of Environmental Protection and the Department of Citywide Administrative Services applied for site selection and acquisition of the subject property for condemnation.
The City of New York commenced this condemnation proceeding by notice of petition and petition dated May 8, 2009. In the petition, the City requested the Supreme Court to determine, without a jury, the amount of just compensation which should be made to the claimants. Title to the subject property vested to the City on June 25, 2009. The court conducted a nonjury trial in October 2014 as to the valuation of the property. At the nonjury trial, the claimant presented revised plans for development which included additional housing. The court found that the value of the subject property was $10,100,000 and awarded the claimants that principal sum. The City appeals.
"The measure of damages in condemnation is the fair market value of the condemned property in its highest and best use on the date of the taking" (Matter of City of New York [Franklin Record Ctr.], 59 NY2d 57, 61). The fair market value is the price for which the property would sell if there was a willing buyer who was under no compulsion to buy and a willing seller under no compulsion to sell (see Keator v State of New York, 23 NY2d 337, 339). A determination of the highest and best use of property must be based upon evidence of a use which reasonably could or would be made of the property in the near future (see Matter of Town of Oyster Bay [55 Motor Ave. Co., LLC], 156 AD3d 704, citing Matter of City of New York [Broadway Cary Corp.], 34 NY2d 535, 536). The burden of proof on that issue was on the claimant (see Matter of City of New York [Broadway Cary Corp.], 34 NY2d at 536; Matter of Town of Oyster Bay [55 Motor Ave. Co., LLC], 156 AD3d at 708-709).
As evidence of highest and best use, the claimant presented evidence of its hardship exemption, and evidence of specific plans for the yeshiva, including streets, parking, and lots that would be left vacant. In contrast to the plans considered by the FWAB in 1991, for the construction of a 53,000 square-foot facility, the plans presented to the Supreme Court consisted of four buildings, with a total floor area of 302,000 square feet. Two of the tax blocks, consisting of 103,608 square feet, would be occupied by structures cited in the original plan, to wit, an 8,000 square-foot building containing a synagogue and offices, and a second seven-story building containing 15,000 square feet of classrooms and 94,200 square feet of housing. Two other blocks consisting of 111,127 square feet would be occupied by two additional buildings, each seven stories in height, consisting of 184,800 additional square feet of housing. The two remaining tax blocks consisting of 91,227 square feet would remain undeveloped. At the hearing, the parties submitted into evidence a stipulation which, inter alia, provided that the site preparation and foundation work for the plans would cost an additional $581,152.
The Supreme Court found that the concrete step taken by the claimant of pursuing a hardship exemption demonstrated that the use as a yeshiva was not a hypothetical, and therefore the use of the property as a yeshiva was the highest and best use of the property. Contrary to the City's contention, that planned use was not merely speculative. The failure to develop the property in accordance with its highest and best use was explained by actions taken by the City toward the acquisition of the property shortly after the FWAB rulings, and in light of the moratoria on all wetlands development initially imposed in 2003 (see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d 654, 655; Matter of Village of Dobbs Ferry v Stanley Ave. Props., Inc., 95 AD3d 1027, 1029). Accordingly, the court's finding that the "highest and best use" of the property was for development of a proposed yeshiva facility was supported by the evidence.
"The bedrock of eminent domain law is the principle that, when private property is taken for public use, the condemning authority must compensate the owner so that [it] may be put in the same relative position, insofar as this is possible, as if the taking had not occurred'" (Matter of Queens W. Dev. Corp. [Nixbot Realty Assoc.], 139 AD3d 863, 865, quoting Matter of County of Orange v Monroe Bakertown Rd. Realty, Inc., 130 AD3d 823, 824). The best evidence of value is a recent sale of the property between a seller under no compulsion to sell and a buyer under no compulsion to buy (see Matter of Allied Corp. v Town of Camillus, 80 NY2d 351, 356). Absent such evidence, the courts have used three methods of valuation: valuation based upon comparable sales, valuation based upon capitalization of income, and valuation based upon reproduction costs less depreciation, with valuation based upon comparable sales as the preferred method (see id. at 356).
We agree with the Supreme Court's conclusion that the property could not be valued as specialty property, since the property was unimproved (see Matter of County of Suffolk [C. J. Van Bourgondien, Inc.], 47 NY2d 507, 511). The court adopted the comparable sales methodology, used by the claimant's appraiser, based upon allegedly comparable sales of property similarly zoned for residential use as well as use for community facilities and schools.
"In determining an award to an owner of condemned property, the findings must either be within the range of the expert testimony or be supported by other evidence and adequately explained by the court" (Matter of City of New York [Reiss], 55 NY2d 885, 886; see Matter of Metropoitan Transp. Auth. [Washed Aggregate Resources, Inc.], 102 AD3d 787, 790). Where the parties offer inconsistent highest and best uses and their experts appraise only their own proposed uses, the award must be based upon the evidence offered by the party prevailing on the use question "with such adjustments as the evidence will support" (Crosby v State of New York, 54 AD2d 1064, 1065; see Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d at 655; Gyrodyne Co. of Am., Inc. v State of New York, 89 AD3d 988, 990).
The subject property was zoned for use as residences, community centers, and schools. We agree with the Supreme Court's determination to base its valuation on the claimant's appraisal, "with such adjustments as the evidence supported" (Matter of City of Long Beach v Sun NLF Ltd. Partnership, 124 AD3d at 655). In support of its claim that the comparable sales were not comparable, the City cites Matter of 730 Equity Corp. v New York State Urban Dev. Corp. (142 AD3d 1087), where the court ruled that properties similarly zoned for automotive use were not comparable, because it was likely that the properties would be rezoned for hotel use, and the claimant claimed that the highest and best use was for hotels. That case has no application to the instant case, where the applicable zoning laws allowed for use as residences, community centers, and schools. Residential use was more common, and therefore recent sales were of parcels used for residential purposes. The court selected three comparable sales of lots in closest proximity to the subject property. The court increased the downward adjustment for size to 25%, which was adopted from the City's appraisal.
As previously noted, according to the claimant's revised plans for a yeshiva, four of the six tax blocks of the parcel would be developed, and the remaining two tax blocks consisting of 91,227 square feet would remain undeveloped. The City opined that the value of the subject property, based upon a highest and best use of undeveloped property, was $3 per square foot. The City further argued that, even if the claimant's position was fully accepted, the two tax blocks that remained undeveloped should still be valued at $3 per square foot.
The Supreme Court rejected the City's argument on the ground that the two tax blocks remained vacant so that the claimant could increase the floor area of the yeshiva, as reflected in the claimant's revised plans for development. However, the revised development plans submitted to the court—in an effort to maximize potential development and thus, potential value—reflected a considerably more concentrated plan for development than the initial proposal of a 53,000 square-foot facility with some additional space for student and faculty housing. The evidence of potential development of this increased scale was unconvincing.
The claimant established the potential for development of the two tax blocks [*3]consisting of 103,608 square feet for a synagogue and offices, 15,000 square feet of classrooms, and 94,200 square feet of housing. However, the weight of the credible evidence fails to support the claimant's position that its development would include two additional buildings totalling 184,800 square feet for additional housing. Therefore, we conclude that the highest and best use of the two tax blocks designated for those two additional buildings was as undeveloped land. Those two tax blocks, consisting of 111,127 square feet, in addition to the remaining two blocks consisting of 91,227 square feet which concededly would remain undeveloped, should be valued at $3 per square foot, or $607,062. The two blocks which would be developed, amounting to 103,608 square feet, were properly valued at $39.27 per square foot, or $4,068,686.16.
In view of the more modest potential development, involving only one and not three seven-story buildings, the sum of the extraordinary foundation work, including wood piles, should be reduced from the sum of $581,152 set forth in the stipulation between the parties, to the sum of $193,717.33. After deducting those costs and other extraordinary site preparation costs of $1,316,518, also set forth in the stipulation, the total value of the property is $3,165,513 (rounded).
Accordingly, the order, judgment, and fourth separate and partial final decree should be amended to award the claimant the principal sum of $3,165,513.
MASTRO, J.P., RIVERA, HINDS-RADIX and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court